**Pages 1 - 17**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

MASTEROBJECTS, INC.,              )
                                  )
         Plaintiff,               )
                                  )
    VS.                           )  **NO. 21-cv-05428-WHA**
                                  )
FACEBOOK INC.,                    )
                                  )
         Defendant.               )
_____)

San Francisco, California
Thursday, October 21, 2021

**TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

**TELEPHONIC APPEARANCES:**

For Plaintiff:
        HOSIE RICE LLP
        Transamerica Pyramid
        600 Montgomery Street, 34th Floor
        San Francisco, California 94111
  **BY:  SPENCER HOSIE, ATTORNEY AT LAW**
       **DIANE S. RICE, ATTORNEY AT LAW**
       **DARRELL R. ATKINSON, ATTORNEY AT LAW**

For Defendant:
        LATHAM & WATKINS LLP
        140 Scott Drive
        Menlo Park, California 94025
  **BY:  DOUGLAS E. LUMISH, ATTORNEY AT LAW**
       **JEFFREY G. HOMRIG, ATTORNEY AT LAW**

Also Present:       **Katie Brockway, Facebook**

REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
        CSR No. 7445, Federal Official Court Reporter

```
 1   Thursday - October 21, 2021                         11:33 a.m.
 2                        P R O C E E D I N G S
 3                             ---oOo---
 4       THE CLERK:  Okay.  21-cv-5428, MasterObjects versus
 5   Facebook.
 6       Counsel, please state your appearances.
 7       MR. HOSIE:  Good morning, Your Honor.  This is Spencer
 8   Hosie of Hosie Rice LLP.  We serve as counsel for the
 9   plaintiffs, MasterObjects.  With me on the phone are my
10   partners Diane Rice and Darrell Atkinson.
11       THE COURT:  Welcome to all of you.
12       MR. HOSIE:  Thank you.
13       MR. LUMISH:  Good morning, Your Honor.  Doug Lumish,
14   Latham & Watkins, for Facebook.  With me is my partner Jeff
15   Homrig and, from Facebook, Katie Brockway.
16       THE COURT:  Okay.
17       MR. HOMRIG:  Good morning, Your Honor.
18       THE COURT:  Good morning.
19       All right.  Is this a carbon copy of the other case that I
20   have, whose name I've forgotten, the other defendant that I
21   already -- it's Amazon.  Amazon.
22       Is this a carbon copy of the Amazon case, or is there a
23   difference?
24       MR. HOSIE:  Your Honor, this is Spencer Hosie for
25   MasterObjects.
```

1    It is essentially a carbon copy. Same patents asserted,
2 same technology.
3    **THE COURT:** What does Mr. Lumish say?
4    **MR. LUMISH:** Your Honor, I'd say it's close to a carbon
5 copy. There will be differences in the accused technologies,
6 but the patents are the same, plaintiff is the same. Many of
7 the issues overlap.
8    **THE COURT:** All right. Let me hear -- each of you tell me
9 what you think is the most efficient way to end this case
10 promptly.
11    Let's hear from plaintiff first.
12    **MR. HOSIE:** Thank you, Your Honor. Spencer Hosie again
13 for MasterObjects.
14    I think a near-term mediation might well be productive.
15 I think Facebook likely agrees with me, but I'll let Facebook
16 speak for Facebook. We had agreed to use Randy Wulff, but
17 unfortunately, he's booked and then on sabbatical. So we're
18 discussing a replacement real time, as in today. But I think a
19 mediation is the next step and might well work.
20    **THE COURT:** All right. What does Lumish say?
21    **MR. LUMISH:** Thank you, Your Honor. Doug Lumish.
22    The mediation, I think, is fine by Facebook. Our view is
23 the likely fastest way to resolve the case is to get it to
24 summary judgment as quickly as we can, but we do agree that a
25 mediation would be worthwhile here.

1  **THE COURT:** I'm inclined to do my showdown procedure.
2  Each side gets to pick one claim.
3  How many claims are there total in this case, and how many
4  patents?
5  **MR. HOSIE:** Spencer Hosie, Your Honor.
6  There are four patents and, from memory, I think about
7  40 claims, but that number will be reduced substantially as we
8  go forward.
9  On the showdown, Your Honor, neither party thinks it's
10  sensible because one of the largest issues in the case is
11  Facebook's inequitable conduct defense, which is invariably
12  deeply nuanced and factual, and a showdown summary judgment
13  would not address that issue at all.
14  **THE COURT:** Well, but that's what the Amazon people told
15  me and they got away with it, and then nothing -- no one has
16  brought any summary judgments or anything in the Amazon case on
17  inequitable conduct. They told me exactly the same thing.
18  In fact, I'm very inclined to go back and superimpose the
19  showdown procedure on them, because I thought by now the case
20  would be over. That's what they told me. But, no, it's not
21  over. It's still rolling on.
22  So I'm not sure I agree with what you're telling me.
23  What is the -- let me -- what is this supposed inequitable
24  conduct? Tell me. You ought to be able to give it to me in a
25  short paragraph.

1    **MR. LUMISH:**  I can, Your Honor.  This is Doug Lumish
2    speaking for Facebook.
3        There are two grounds for inequitable conduct.
4        And let me first disagree with Mr. Hosie that this is the
5    most important issue in the case.  It's one of several
6    defenses.
7        In any event, to answer Your Honor's question, there's two
8    grounds.  As Your Honor knows, these patents are the tail end
9    of a long campaign for licensing, and there have been a lot of
10   lawsuits about them.  In those lawsuits that came before, the
11   defendants have identified a lot of prior art, and have gone
12   through the great pains of doing invalidity contentions that
13   lay out the reason why those pieces of prior art invalidate the
14   claims.
15       In -- in no instance did MasterObjects ever disclose the
16   contentions to the Patent Office, which, from our perspective,
17   is a table of contents that would allow, and maybe is the only
18   way that would allow, a busy examiner to go through the
19   haystack and find the needles of key prior art and which ones
20   go together best and why.
21       So that's ground one, is the failure to disclose the
22   contentions themself.
23       For some patents --
24   **THE COURT:**  What do you mean?  What contentions?
25   **MR. LUMISH:**  Invalidity contentions, Your Honor.  The

1  prior cases, many of them were here in this district; and, in
2  fact, I was counsel in one of them.  And there were very
3  detailed invalidity contentions documents disclosed, according
4  to the Court's patent local rules.  Those were not provided to
5  the Patent Office.
6      **THE COURT:**  But weren't the patents already issued?
7      **MR. LUMISH:**  The -- so the patents that are at issue in
8  this case were not already issued.
9      **THE COURT:**  What does the law say in the Federal Circuit
10 in that circumstance, whether or not you have to disclose
11 somebody else's contention that you don't agree with?
12     **MR. LUMISH:**  The law requires you to disclose all material
13 information that, but for its disclosure, would have led to a
14 finding that the claims were not patentable.
15     I can't cite to Your Honor a case that goes directly to
16 the contentions themselves.  But the argument here in this one
17 defense is that they dumped a ton of prior art on the
18 Patent Office but held back from the Patent Office this table
19 of contents in the form of these contentions and, because of
20 that, put the examiner in a position where essentially it just,
21 you know, checked the boxes, signed off on the prior art, was
22 unable to identify the key references from among the large
23 volume that were produced -- or that were disclosed, I should
24 say.
25     **THE COURT:**  All right.

1    **MR. LUMISH:**  That's issue one.  There's a second ground,
2    Your Honor, but I think that's the main ground.
3        The second ground is, there are some references for some
4    of the patents-in-suit that weren't disclosed at all.  So among
5    the prior art references that the defendants in the prior
6    lawsuits were -- included in their contentions and produced to
7    MasterObjects, for some of the prosecutions of the four patents
8    in this case, not all of that art was actually disclosed to the
9    Patent Office.  It seems like there was a deliberate effort to
10   pick and choose patent by patent in a way that didn't make a
11   lot of sense to us, and we're seeking discovery on that.  But
12   that's the second ground for inequitable conduct.
13       **THE COURT:**  Okay.  If we did this case in what I would say
14   the normal way, as opposed to the showdown way, I have a trial
15   set, I believe, next June in the Amazon case on the same
16   patents.  Could you all be ready to go to trial in that --
17   maybe have the same jury decide everything in that trial?  What
18   do you think of that idea?
19       **MR. HOSIE:**  This is Spencer Hosie for MasterObjects,
20   Your Honor.
21       Yes, that would work for the plaintiff.  I think it's a
22   sensible idea.
23       I would like to respond briefly, when the Court finds it
24   proper, to Mr. Lumish's comments about inequitable conduct,
25   because --

1    **THE COURT:**  All right.

2    **MR. HOSIE:**  -- what he said is not accurate.

3    **THE COURT:**  All right.  Mr. Lumish, how about going to
4    trial at the same time as Amazon?

5    **MR. LUMISH:**  I have not spoken with Facebook about that,
6    Your Honor, but I would not like that outcome, at least as my
7    initial impression.

8    There's going to be different infringement arguments, I
9    suspect.  There's going to be different technology.  There's
10   going to be different damages issues.  Whereas for Facebook,
11   Search is a fairly trivial part of its offering, that may not
12   be true for any other defendant.

13   And so my initial reaction to Your Honor's proposal is we
14   would oppose that and think we should have our own trial.

15   **THE COURT:**  Well, but then that means the same patents and
16   invalidity have got to be decided by two different juries.

17   **MR. LUMISH:**  That's right.

18   **THE COURT:**  And two different juries have got to be
19   educated over it.  And that's a problem.

20   **MR. LUMISH:**  We could consider the notion of a
21   consolidated invalidity trial, Your Honor.  That might be
22   something we could agree to.

23   But infringement and damages, I think, are important and
24   separate issues that we would -- at least on our view, need to
25   be kept separate.

1  **THE COURT:** Well, but I don't understand why. If we have
2  a fair jury who's willing to take the time, the jury could
3  master the patents. If they're found valid, then they're
4  educated and up to speed and could tell whether they read on
5  your product and whether they read on the product of the other
6  side -- other -- Amazon.
7     All right. Well, if we don't do that, what is the trial
8  date that you would want? Is that November 7th?
9     **MR. LUMISH:** Doug Lumish, Your Honor, for Facebook.
10    That is the agreed date that the parties proposed, yes.
11    **THE COURT:** So this proposed date in your scheme, both
12 sides agree to it. Is that correct?
13    **MR. HOSIE:** That is correct, Your Honor.
14    Spencer Hosie.
15    **THE COURT:** I'm okay with your contentions served in the
16 prior case. Was this in Texas? Is that right?
17    **MR. HOSIE:** It was, Your Honor.
18    Spencer Hosie.
19    **THE COURT:** All right. Then I'm okay. You both want
20 that. Correct?
21    **MR. LUMISH:** Doug Lumish for Facebook, Your Honor.
22    Yes, the parties have agreed that each will not challenge
23 the other's as being non-compliant with the patent local rules
24 if Your Honor was okay with that.
25    **THE COURT:** I'm okay with that.

1    I don't like *Daubert* motions. I think it's grossly abused
2 these days. Just be aware of that.
3    Well, I'm inclined to give you the schedule you want on
4 the case as a whole, but I'm still probably going to do the
5 showdown procedure anyway.
6    Here's the thing I find. If your product -- are these
7 patents still -- are they expired, or are they still valid?
8    **MR. HOSIE:** They're still valid, Your Honor.
9    Spencer Hosie.
10    **MR. ATKINSON:** I'm sorry, Your Honor. This is Darrell
11 Atkinson.
12    They've expired.
13    **MR. HOSIE:** Oh, they have?
14    **MR. ATKINSON:** Yes.
15    **MR. LUMISH:** They've all expired, Your Honor.
16    This is Doug Lumish speaking.
17    **MR. HOSIE:** I stand corrected.
18    **THE COURT:** All right. Well, then what I was about to say
19 is moot; so I won't say it. Okay.
20    **MR. LUMISH:** Your Honor, may I be heard on the showdown
21 point? This is Doug Lumish.
22    **THE COURT:** Yes. Please go ahead.
23    **MR. LUMISH:** In general, I don't have a strong objection.
24    The reason we didn't seek one here is just the current
25 posture of the case. There's already been the inventor of

1   the -- pardon me -- the deposition of the inventor, the main
2   inventor.  There's been a number of other depositions that have
3   gone forward.  None of those were focused on any one particular
4   champion claim or champion issue.
5       And so while we see the wisdom of your showdown process
6   early on in a case where it will help streamline things and
7   potentially get rid of the case more efficiently and cheaper,
8   I think that that ship has already sailed in this case.
9   There's already a lot of discovery.  There's not that much more
10  to do.
11      And so we see this case as actually being more efficiently
12  resolved by just finishing the discovery that's left to be done
13  and just getting the case in to Your Honor with summary
14  judgment and trial.
15      **THE COURT:**  Who was that that was speaking?
16      **MR. LUMISH:**  That was Doug Lumish, Your Honor --
17      **THE COURT:**  Okay.
18      **MR. LUMISH:**  -- for Facebook.
19      **THE COURT:**  Well, I'll consider what you said.
20      How many depositions were taken in Texas?
21      **MR. LUMISH:**  I don't have the number in front of me,
22  Your Honor.  I think it's on the order of four or five.
23      **MR. HOSIE:**  Your Honor, Spencer Hosie.
24      There were two depositions taken, 30(b)(1) depositions.
25  Both were a half day.  And then Mr. Lumish spent two days

1   deposing the inventor in a 30(b)(6).  Discovery is not remotely
2   completed.
3       I do think that there is an efficiency here to the Court's
4   showdown procedure, putting aside the inequitable conduct
5   issues, which I would like to address in 20 seconds, if
6   the Court would do me the --
7       **THE COURT:**  Yes, go ahead.  You wanted to do that, and I
8   never came back to you.  Go ahead.
9       **MR. HOSIE:**  Yes.  Thank you, Your Honor.
10      So there are two issues.
11      One, Facebook alleges that we failed to disclose
12  54 specific prior references.  That's empirically untrue.  The
13  very references they said we hid are listed on the face of the
14  patents attached to the complaint.  Full stop, period.
15      Second, they contend that we had an obligation to give to
16  the PTO these prior invalidity contentions in prior cases, even
17  though we gave every single piece of prior art in those
18  contentions to the Office.  And the law does not require that
19  of a patent prosecution.  It's not material, and they can't
20  show otherwise.
21      Huge amount of --
22      **THE COURT:**  I'm sorry.  Wait a minute.  You're saying that
23  the contentions are not material?
24      **MR. HOSIE:**  They have to -- Your Honor, they have to show
25  that they're but-for material combination of references by

1  combination.  And we've been pressing them to do that.  They've
2  refused to do that.  Many of the combinations include
3  references that post-date the priority date of the patents.
4  Many of -- all of them were disclosed, the actual underlying
5  references.
6      **THE COURT:**  Well, but the other side's point is that you
7  gave so many that the poor examiner was overwhelmed.  And you
8  should have also given the Rosetta stone, which was the other
9  side's contentions of how they all fit together to show
10 invalidity.  And you didn't give the Rosetta stone; so the poor
11 examiner was at sea and drowned, went down for the third time.
12 That's the --
13     **MR. HOSIE:**  Your Honor, there were only 54 references.
14 That's hardly dumping the Library of Congress on the PTO.
15     **THE COURT:**  All right.
16     **MR. HOSIE:**  There was no need for --
17     **THE COURT:**  I could only read about 52 -- I mean, about
18 two, and 52 would never get read.  So, I'm sorry.
19     But is there case law on this point about having to reveal
20 the contentions made in litigation?  I don't know.
21     **MR. HOSIE:**  There is, Your Honor.
22     **THE COURT:**  I haven't had this problem before.
23     **MR. HOSIE:**  There is, Your Honor.  The party objecting --
24 Spencer Hosie.
25     The party objecting has to show that the actual

1  combinations in the contentions were but-for material.  And
2  absent that, there's no -- no harm, no foul.
3      I will say, Your Honor, we had filed a 12(c) brief on this
4  in Texas on the inequitable conduct allegations.
5  Judge Albright did not reach that brief, but it remains fully
6  briefed and pending on this Court's calendar.  And I believe,
7  per your protocol, we need to re-notice it.  And that might
8  move this matter forward.
9      **MR. LUMISH:**  Your Honor, this is Doug Lumish from
10 Facebook, if I might --
11     **THE COURT:**  Go ahead.
12     **MR. LUMISH:**  -- on this point.
13     Thank you.  So to answer Your Honor's question first,
14 we're not aware of a case squarely on point concerning the
15 contentions.  And so this might be a matter of first impression
16 to Your Honor.
17     I believe there are some cases that talk about how,
18 you know, you need to be candid with the examiner, you need to
19 do all sorts of things beyond just disclose prior art, which we
20 would rely upon.  But I do not have a case that says you have
21 to disclose contentions or that you don't have to disclose
22 contentions.  So it might be a matter for Your Honor to decide
23 in the first instance.  That's one.
24     Two, on the 54 references -- Mr. Hosie says this all the
25 time and it's just not our position -- the Court's guidelines

are clear that you shouldn't misstate the other party's contentions, and that's what you just heard. Our inequitable conduct position is what I told Your Honor, not what Mr. Hosie said it was.

Third, on the 12(c) motion, if Your Honor is doing a showdown, then I think this would all fall within that. But they do have a 12(c) motion. We think if that motion is brought and adjudicated early, it ought to count as their early summary judgment motion with all the ramifications that if it's denied, which we fully hope it would be, that they're out; they're done with SJ motions.

We could have and considered bringing an early 101 motion to Your Honor under 12(c). We didn't want to be perceived as or even hinting towards trying to do an end around on your summary judgment procedures, and so we chose not to bring that motion. We think there is a strong 101 motion to be brought here.

And so if that 12(c) motion is going to be brought and adjudicated early, we would just ask that it be treated as their early summary judgment motion with all the ramifications that attach.

**MR. HOSIE:** Your Honor, Spencer Hosie.

We filed this as a 12(c) in a jurisdiction that didn't require that this be an early summary judgment motion, and so Mr. Lumish is proposing to change the rules of the game in

1  retrospect.
2      **THE COURT:** Well, but, I mean, there's nothing pending in
3  front of me.  Correct?
4      **MR. HOSIE:** No.  We haven't re-noticed it.
5      **THE COURT:** Well, if you do re-notice it, then you would
6  be maybe using up your one motion.  So be careful why you do
7  that.
8      **MR. HOSIE:** All right.  We will take that -- we will take
9  that guidance to heart, Your Honor.
10     **THE COURT:** All right.  I've run out of steam here.  I'm
11 going to -- I don't know the answer.  I'm going to get out an
12 order.  I want to think about it, talk to my law clerk, and do
13 some thinking about the other case.
14     When will you know about your new mediator?
15     **MR. HOSIE:** Spencer Hosie, Your Honor.
16     I would suspect in the next several days.
17     Mr. Lumish?
18     **THE COURT:** Then send me a letter, letting me know who it
19 is and what your timetable is on mediation.
20     **MR. HOSIE:** We'll do so, Your Honor.
21     Spencer Hosie again.
22     **MR. LUMISH:** Doug Lumish for Facebook, Your Honor.
23     I think we'll need more than a few days, just given
24 Facebook's size and docket.  And so we would appreciate a
25 little more time to just reach agreement.

1    I fully expect we will reach agreement on a mediator.
2 We've done it before with Mr. Hosie.  We think we'll do it
3 again here and that we'll get something on calendar.  We'll
4 have a mediator selected and some date selected within the next
5 couple three weeks, is my suspicion.  But I am not saying that
6 the mediation itself would be conducted within the next
7 three weeks.  I think that would be --
8    **THE COURT:**  Oh, no, no.  No, I don't think you could do it
9 in three weeks.  But you could do it by the end of the year.
10 That's for sure.
11    **MR. LUMISH:**  I think both parties would like to do that.
12    **THE COURT:**  Yeah.  I think you should --
13    **MR. HOSIE:**  Agreed.
14    **THE COURT:**  -- do that.
15    **MR. LUMISH:**  Agreed.
16    **THE COURT:**  Okay.  All right.  Good luck to both sides.
17    **MR. LUMISH:**  Thank you, Your Honor.
18    **MR. HOSIE:**  Thank you very much, Your Honor.
19    **THE COURT:**  See you soon.  Bye-bye.
20            (Proceedings adjourned at 11:53 a.m.)
21                    ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, November 9, 2021

*Ana Dub*

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter