1  SPENCER HOSIE (CA Bar No. 101777)
   shosie@hosielaw.com
2  DIANE S. RICE (CA Bar No. 118303)
   drice@hosielaw.com
3  DARRELL R. ATKINSON (CA Bar No. 280564)
4  datkinson@hosielaw.com
5  HOSIE RICE LLP
   505 Sansome Street, Suite 1575
6  San Francisco, CA 94111
7  (415) 247-6000 Tel.
   (415) 247-6001 Fax
8
9  *Attorneys for Plaintiff*
   *MASTEROBJECTS, INC.*

**REDACTED VERSION OF DOCUMENT FILED UNDER SEAL**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| MASTEROBJECTS, INC., | Case No. 3:21-cv-05428 WHA (DMR) |
| *Plaintiff,* | **PLAINTIFF MASTEROBJECTS, INC.'S REPLY TO DEFENDANT META PLATFORMS, INC.'S OPPOSITION TO MASTEROBJECTS' MOTION FOR SANCTIONS** |
| v. | |
| META PLATFORMS, INC., | Date: August 25, 2022 |
| *Defendant.* | Time: 8:00 a.m. |
| | Judge: Hon. William Alsup |
| | Courtroom: 12, 19th Floor |
| | Complaint Filed: February 5, 2020 |
| | Trial Date: November 7, 2022 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY ............................................................................... 1

II. META DID NOT DISCLOSE FAIRLY .......................................................................... 3

III. THE DRIVING ISSUE: DID META AND ITS LAWYERS TRULY BELIEVE THAT THE WITHHELD EVIDENCE COULD NOT BE CREDITED BY JUDGE, JURY OR MASTEROBJECTS? ....................................................................................... 4

IV. MASTEROBJECTS DID NOT DISTORT WITNESS TESTIMONY .............................. 8

V. META'S MISCELLANEOUS ARGUEMNTS

    A. MasterObjects Did Not Prepare its Sanctions Motion in Two Days and File it in Bad Faith ............................................................................................... 13

    B. Meta's Brief Devotes Four Pages to Attacking MasterObjects' Lead Counsel Spencer Hosie Personally .......................................................................... 13

VI. CONCLUSION ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Case**                                                                                                           **Page**

*Finjan, Inc. v. Juniper Network, Inc.*,
  No. 17-05659-WHA, 2018 WL 4184338 (N.D. Cal. Aug. 31, 2018) ................................ 8

## I. INTRODUCTION AND SUMMARY.

Why didn't Meta simply disclose to MasterObjects the Unicorn typeahead ("TA") Verticals, the ███████████████? Meta concedes that both contain ███████ ████████████████████████████████████████████████████████. Meta agrees that it loads these ██████████████████ into the two Unicorn backend Verticals. Meta likewise concedes that it uses these Verticals as part of the process to ████████ ██████████████.

From filing forward, one critical dispute has been **whether** TA's server backend had a cache built from or containing prior search session data. Meta adamantly said no; MasterObjects diligently sought to prove otherwise. It is very implausible that Meta and its counsel never even considered whether MasterObjects might "reasonably credit" Meta evidence directly contradicting Meta's "no cache" advocacy position.

Meta defends its discovery record in two contradictory ways. It first says that it **did** disclose by producing two cryptic documents (out of the 400,000 pages produced), and by producing 11 million source code files, almost all unrelated to TA. Meta has no serious argument that it disclosed fairly. The discovery record reveals that Meta worked hard to screen out relevant documents, and carefully crafted interrogatory responses that omitted the most critical points. Meta's failure to disclose took real effort, and could not be the result of mere inadvertence.

This motion turns on Meta's second justification for its disclosure record. Under Paragraph 25 of this Court's Supplemental CMC Order, Meta and its counsel had a duty to produce evidence contradicting its advocacy position, even if not sought in discovery, if that evidence "might reasonably be credited by the judge or jury or opposing counsel." Under this Paragraph, Meta counsel had a duty to correct testimony or discovery responses that it knew or learned to be incorrect. As the Order itself recognizes, the provisions of Paragraph 25 represent a departure

from the typical rule that a party has no duty to volunteer adverse information.

Meta's brief works hard to persuade this Court that Meta and its counsel neither did nor reasonably could "realize" that MasterObjects might value evidence undercutting Meta's litigation position. Stripped of invective, and put plainly, Meta's justification of its "never realized" argument is as follows:

1.    Meta finds comfort in William Pei and Bobby Zhou denying that the two Verticals at issue (once disclosed) were caches. Of course they did. But neither are judge nor jury, and this litigation testimony has nothing to do with shaping fair discovery.

2.    Meta also argues that the claimed "cache" must be entirely distinct from a different "content source," and that the ▓▓▓▓▓▓▓▓▓▓ are content sources not caches. *See, e.g.*, Opp. (ECF 173) at 10:16-11:6.

3.    And, Meta argues that its Verticals are not built using ▓▓▓▓▓▓▓▓▓▓, *see id*. at 12:9-18, and that its ▓▓▓▓▓ does not contain this information. *See id*. at 20:4-5.

On this construct, Meta concludes that it never did nor possibly could credit a MasterObjects contrary view. Meta so argues that its litigation position was so incontrovertibly correct that it never even considered whether MasterObjects might think otherwise. Meta then concludes that it had no duty to produce adverse evidence, and could do so without any disclosure to MasterObjects.

Meta did exactly what Paragraph 25 prohibits. Meta's quarrel about the meaning of the word "cache" is a semantic debate, not a justification for withholding evidence. MasterObjects understood that Meta was finding safe harbor in its cache meaning quibbles, and so asked questions at deposition and propounded discovery carefully not using the word "cache," but instead inquiring into server-side "components," "data sources," and the like.

The truth about what happened is found in Meta's own discovery responses. Meta worked

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

hard to screen out adverse evidence. For example, out of 400,000 pages produced, Meta now selects just two cryptic documents that elliptically reference the relevant Verticals; is it Meta's position that these cryptic documents are the only and best documents it has explaining its TA backend function? With the benefit of hindsight, Meta carefully crafted its interrogatory responses to disclose many irrelevant functions, while never mentioning the two Verticals containing █████████████, nor how it built these Verticals, nor the role these Verticals played in providing █████████████. Put charitably, it is implausible to believe that such strategic omissions were inadvertent.

There is another critical point here, too. If Meta genuinely believed that the █████ were "content sources," and that a cache cannot be a content source, as it now contends, the withheld evidence was directly relevant to asserted MasterObjects claims that do not contain "cache" limitations. This evidence was also directly relevant to Masterobjects asserted claims that refer to a "content source" that responds to partial client queries. Meta knew of these asserted claims. Meta's own invalidity expert served an 832-page report dissecting these very claims exactly.

Meta may certainly argue the facts. But Meta had a duty to produce the facts. If a party could assume its own litigation position inevitably correct, and so withhold evidence to the contrary, litigation today would be far simpler. But jury trials would not be decided on the facts or the truth.

## II. META DID NOT DISCLOSE FAIRLY.

Meta's contention that it disclosed fairly is perfunctory. It first argues that it fairly disclosed by producing two cryptic documents containing the same schematic referencing the backend Verticals. These two documents are not dated, nor identify the author. They were produced in a case where Meta witnesses and Meta discovery responses denied any server-side

cache or component or store containing prior session data. In context, there is no way these two documents put MasterObjects on notice of how the TA backend truly worked. Does Meta contend that these two documents are the only and best Meta documents describing its Unicorn Verticals, how they were built, and how they were used in selecting a TA response? After Mr. Pei's second deposition, MasterObjects can prove otherwise. The documents Meta did produce contain hyperlinks to technical documents addressing the two Verticals specifically, but do so using Meta's own opaque nomenclature, as set forth in MasterObjects' Opening Brief. *See* Opening Br. (ECF 160) at 19:17-25 & 20:10-13. Meta has not produced these documents in this case.

On its source code production, scattering (Meta's word) a few relevant TA code files amongst 11 million irrelevant files is concealment, not disclosure. *See, e.g.*, Hosie Reply Dec., Ex. X, 37:19- 38:2 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮"). Meta's engineers obviously had the ability to identify Meta code files relevant to TA. Meta has yet to explain why it produced 11 million code files, all but a few entirely irrelevant.

## III. THE DRIVING ISSUE: DID META AND ITS LAWYERS TRULY BELIEVE THAT THE WITHHELD EVIDENCE COULD NOT BE CREDITED BY JUDGE, JURY OR MASTEROBJECTS?

Paragraph 25 of this Court's Supplemental CMC Order provides as follows:

> Counsel may not make arguments or statements to the judge or jury or opposing counsel that counsel realize are contradicted by unproduced material, whether requested or not, when such material might reasonably be credited by the judge or jury or opposing counsel. If counsel learns of such adverse material after having made a representation or argument, counsel must very promptly correct the statement or argument and explain the basis for the correction. The same is true for interrogatory answers and FRCP 30(b)(6) testimony. This is an exception to the normal rule that counsel need not volunteer adverse information.

In most cases, it is difficult to prove subjective intent. This is not one such case. Meta's

discovery responses in this case prove that Meta and its counsel withheld adverse evidence precisely because both understood that this evidence would be critically important to MasterObjects, as against the converse.

Meta begins its "we never realized" advocacy by attacking MasterObjects. *See* Opp. at 9. Meta says that MasterObjects is "plainly wrong" in saying that Meta had to understand that MasterObjects might "reasonably credit" the withheld evidence. To explain its contrary position, Meta first provides its own narrow definition of the word "cache," while pretending to credit the parties' agreed upon constructions: "In general terms, a cache is a fast type of memory used to temporarily hold data that was previously retrieved from a slower data source so that the data is readily available in the faster memory should another request for the same data be received in the near future …. [T]he parties stipulated to a construction of 'cache' that tracks its ordinary meaning." Opp. at 9:16-26; *see also id*. at 10:26 ("are not small, fast storage …."). [1]

Meta then argues that the MasterObjects claims require a cache entirely separate from a content source, and (counter-factually) concludes that the ▮▮▮▮▮▮▮▮ in the two Verticals are ▮▮▮▮▮▮▮▮. Meta so says that the two Verticals cannot be "caches," but must instead be considered ▮▮▮▮▮▮.

This justification is a convoluted house of cards, not a legitimate reason to withhold adverse evidence. Meta's argument assumes far too much, and takes as a given Meta's position on many hotly controverted issues. Meta's justification also misdescribes its own TA system: the TA Verticals containing ▮▮▮▮▮▮▮▮ ▮▮▮.

Meta also ignores that it knew that Unicorn itself, in conjunction with TA, stood accused:

---

[1] In some claims, the parties agreed to construe "cache" as "a store that includes previous query results retrieved in response to previous queries," and in others as "a store that includes previous queries and search results retrieved in response to previous queries." *See* ECF 62 at 3.

"the accused instrumentalities include … Typeahead and Unicorn." Hosie Reply Dec., Ex. Y (May 5, 2020 Infringement Contentions) at 2.[2]

Even crediting Meta's description of the ▮▮▮▮▮ components of its system, the ▮▮▮ were relevant to non-cache asserted claims and should have been disclosed. *Compare* '024 (ECF 73-1) Claim 1 ("uses the input to query data available to the server system and send return messages to the client object containing results in response to the input") *with* Opp. at 4:16-19 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮").

Further, if Meta believed that the ▮▮▮ were "content sources" (and that a cache cannot be a content source), it had to understand that the withheld evidence was squarely relevant to asserted claims that call for "retrieving" result data from "one or more content sources." *See* '073 (ECF 73-4) Claim 8 ("The method of claim 1, wherein at least a portion of the search result data is retrieved by the server system from the one or more content sources"), '073 Claim 9 ("The method of claim 8, wherein retrieving search result data comprises: sending one or more content inquiries to one or more respective content sources; and receiving content data in response to the one or more content inquiries"); *see also* '866 (ECF 73-8) Claims 5 & 6.

Late in its brief, Meta introduces another justification for its failure to disclose the Unicorn Verticals. Meta argues that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ for subsequent analysis. It then asserts, without explanation, that these ▮▮▮▮▮▮▮

---

[2] Meta suggests that MasterObjects' infringement contentions are deficient. *See* Opp. at 1:11. Meta seems to forget that, following transfer, the parties agreed that the infringement and invalidity contentions were sufficient under this District's local rules. *See* CMC Hr'g Tr., Oct. 21, 2021, 9:21-25 ("MR. LUMISH: Doug Lumish for Facebook, Your Honor. Yes, the parties have agreed that each will not challenge the other's [contentions] as being non-compliant with the patent local rules if Your Honor was okay with that. THE COURT: I'm okay with that").

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

1  ▉, and so are irrelevant in this case. *See* Opp. at 20:3-5 ("there was no reason to identify the

2  ▉, because … ▉

3  ▉") (italics in original; bold added); *id.* at 20:21-22 ("▉

4  ▉

5  ▉").

This is simply incorrect. Of necessity and by design, the TA response to a user **is** a full search query. The TA response is engineered so that a user need only click on that response and the TA full query response is then ▉." It is quite literally true that the ▉ ▉. (The TA system also uses the prior TA prefixes, but that is a fight for a different day.)

Meta knows this is true. As Meta's brief admits, its ▉ ▉. *See* Opp. at 4:26-5:1 quoting Ex. 2 (second Pei deposition) ("▉ ▉"). As Mr. Pei explained in more detail:

▉

Hosie Reply Dec., Ex. Z (second Pei deposition) at 32:2-33:2.

Meta's assertion that its ▉ is empirically false. These ▉

▉

▓▓▓.” Far from being irrelevant, these Meta ▓▓▓ are centrally relevant to its TA process.

Finally, if Meta understood the ▓▓▓ to be content sources or data sources, why did it not identify them in discovery responses? For example, MasterObjects asked Meta to "[i]dentify all … features of the data source … and describe in detail how these … features operate …." Hosie Reply Ex. AA at 8. MasterObjects defined a "data source" as "any source of information (e.g. a database, hard drive, cache, log, and/or repository) … that is used to provide or predict queries or responses as part of the accused instrumentalities." *Id*. at 5. Meta now contends that it understood the ▓▓▓ to be content sources, *see* Opp. at 10:20-21 ("Unicorn ▓▓▓ are, at most, what MasterObjects' infringement contentions say they are: content sources, not caches"), and equates a content source with a data source. *See id*. at 10:16-17 ("a separate structure corresponding to one or more content or data sources") & 19:14-17 ("MasterObjects relies again on the false predicate…: As MasterObjects' infringement contentions admit, Unicorn is a data source, …"). Meta so admits that it believed the ▓▓▓ were data sources, but did not identify these ▓▓▓ in responding to MasterObjects' discovery exactly on point. *See* Hosie Reply Ex. BB.

The positions Meta now takes to try and explain away its prior conduct merely confirm that Meta willfully hid the ball from MasterObjects.

**IV.   MASTEROBJECTS DID NOT DISTORT WITNESS TESTIMONY.**

Meta heatedly contends that MasterObjects distorted witness testimony through strategic omission. Meta cites *Finjan, Inc. v. Juniper Network, Inc.*, No. 17-05659-WHA, 2018 WL 4184338 (N.D. Cal. Aug. 31, 2018), as a case directly on point. This is a well-known opinion written by Judge Beth Labson Freeman. Judge Freeman's opinion shows that Juniper counsel omitted critical language from the asserted claims, thereby manifestly distorting the meaning of

those claims. Meta says that this is exactly what MasterObjects did here.

Not hardly. MasterObjects indeed omitted portions of the testimony quoted, as indicated by ellipses. But these deletions in no way distorted the witness' testimony. MasterObjects attached the full testimony as exhibits to its Opening Brief. Even a quick review of the testimony reflects that MasterObjects deleted testimony where the witness obfuscated or pretended to be confused by the question, or simply refused to answer the question. MasterObjects also omitted Meta's continual objections. MasterObjects would very much have liked to include all of the quoted testimony. The omitted testimony is **bad** for Meta; it shows that the Meta witnesses were evasive and obstructionist.

As part of its deception through deletion argument, Meta says that MasterObjects misquoted Mr. Pei's August 2020 first 30(b)(6) testimony. Meta first contends that Pei truthfully said that the server-side ▮▮▮▮▮▮▮▮▮▮. *See* Opp. at 13:9-10. This is not quite right. MasterObjects' counsel understood that Mr. Pei was qualifying his testimony by quibbling about what the term cache meant and covered. MasterObjects' counsel so asked the central question many different times and in many different ways, including questions not using the word cache, but rather "stores," or "structure," and the like:

- "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *See* Hosie Reply Dec., Ex. X (Pei Dep., Aug. 12, 2020), 38:17-23.

- "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." *Id.*, 39:12-17.

- "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16 ." *Id.*, 46:14-47:3.

17 (Emphasis added). As is true for Meta's written discovery responses, Meta cannot defend its non-

18 disclosure by claiming a contrary understanding of the word cache.

19     Meta further suggests that Mr. Pei directed MasterObjects to relevant Unicorn code at

20 "▮▮▮▮▮." *See* Opp. at 6:20-22. Hardly. This "▮▮▮" folder is within the

21 "▮▮▮" folder, which is the very folder each of the above questions pertain to. As can been seen

22 from the quotes, Mr. Pei did nothing to direct MasterObjects to anything within the ▮▮▮ folder

23 regarding a ▮▮▮▮▮▮▮▮▮▮. Instead, Mr. Pei led MasterObjects

24 

25 away from this folder: "▮▮▮▮▮
26 
27 
28 ▮▮▮." Hosie Reply Dec., Ex. X, 40:11-13 & 46:14-47:3 (emphasis added).

MASTEROBJECTS' REPLY TO META'S OPPOSITION    - 10 -    CASE NO. 3:21-cv-05428 WHA (DMR)
TO MASTEROBJECTS' MOTION FOR SANCTIONS

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

After this misdirection, Mr. Pei then said: "███████████████████████████████████████████████████████████████████████████████████████████████████████████." Hosie Reply Dec. Ex. X, 70:23-71:2. Mr. Pei directed MasterObjects to a "███" subfolder: "█████," not an ████████ folder. While MasterObjects' counsel's question was specific to ██████████████ ████████, Mr. Pei's response was not so limited. Mr. Pei said this ████████ ████████████████████████████████████████████████████████████████████████ ████████.

Mr. Pei was then asked a series of questions about folders within ████, including a ████ folder labeled "██████," that use the word ████. Mr. Pei equivocated on each question, responding that he did not know what the code files did: ████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████." *Id.*, 80:21-25, 82:18-21 & 85:14-24. MasterObjects did not misquote Mr. Pei's testimonial guidance on how MasterObjects should hunt and peck for the relevant TA source code files. Mr. Pei steered MasterObjects away from the relevant files, not the converse.

Meta does have a valid point, however, about the one Kaver quote it cites so prominently in its brief. (This is one quote out of dozens). Read carefully, Mr. Kaver did answer a question other than the one asked. But MasterObjects' point that Kaver claimed to ██████████ ████ is exactly right:

████████████████████████████████████████████████████████ ████████████████████████████████████.

See Hosie Reply Dec., Ex. CC (Kaver Dep., Jun. 22, 2021), 66:23-67:3.

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

1   On ▇▇▇▇ function, here is Mr. Kaver's testimony:

[redacted testimony lines 2–6]

7   *Id.*, 70:1-8.

8   On ▇▇▇▇ function:

[redacted testimony lines 9–18]

19  *Id.*, 71:21-72:22. And, so it went throughout the deposition.

Finally, Meta blames MasterObjects for not grilling Mr. Kaver on the Meta document marked as Exhibit 7, one of the two documents Meta claims discloses fully. *See* Opp. Br. at 7-8. MasterObjects' counsel marked this exhibit after 142 pages of Mr. Kaver denying any technical knowledge even at the most basic level about TA. Why beat a dead horse further? MasterObjects' counsel did ask questions about the second page of the document, specifically about ▇▇▇▇ (a basic concept in technology development). Mr. Kaver's testimony on this point is almost comical:

[redacted testimony line 28]

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

[REDACTED]

Hosie Reply Dec., Ex. CC, 145:4-14. This is the witness that Meta now claims was going to explain the full technical TA backend function to MasterObjects, had MasterObjects' counsel only asked the right questions?

As to Meta's other distortion through deletion charges, they are proven to be without foundation by even a quick look at the attached testimony.

V. **META'S MISCELLANEOUS ARGUMENTS.**

  A. **MasterObjects Did Not Prepare its Sanctions Motion in Two Days and File it in Bad Faith.**

Meta argues with considerable vitriol that MasterObjects slapped-together its sanctions motion in two days, and filed it in bad faith to preempt Meta motions to preclude that Meta counsel said it would file in Magistrate Judge Ryu's court. Meta's evidence of bad faith is the following: "The Motion is manifest with evidence of haste, including typos in the motion title, cover page, and body."

Hardly. As to typos, there are typos in the cover page (which Mr. Hosie did not prepare). There are three typos in the body of the motion: 17:14, "id," should be "id."; 23:14, "counsels" should be "counsels'"; and 25:18, "lies'" should be "lies'". This is "manifest" evidence of haste and malign motive?

MasterObjects began working on the motion in June. *See* Hosie Reply Dec., ¶ 2. It could not and did not write this motion in two days.

  B. **Meta's Brief Devotes Four Pages to Attacking MasterObjects' Lead Counsel Spencer Hosie Personally.**

Oddly, Meta's brief dedicates two pages to castigating MasterObjects' lead lawyer Spencer

Hosie Rice LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111

Hosie. Meta's criticism is trivial on its face. Meta says that Mr. Hosie sends far too many emails (true; Mr. Hosie sends many emails, as this is one way of moving cases forward). Meta then complains that Mr. Hosie's emails contain far too many typos (also true; Mr. Hosie is a terrible typist, especially on mobile devices). Meta complains that Mr. Hosie presses too hard, sets unreasonable deadlines, and has been too quick to question the veracity of Meta witness testimony (not true: Mr. Hosie's obligation is to be a zealous advocate for his client, and he does his best to honor this obligation). Meta also says that Mr. Hosie was rude in one meet and confer session. Yes, tempers occasionally flared on both sides in this contentious case.

The more interesting question is this: what legitimate motive led Meta to include this personal attack in its Opposition? This attack is utterly irrelevant to the issues at hand, as Meta counsel undeniably understand.

## VI.   CONCLUSION.

Meta closes its brief by saying that MasterObjects' requested remedy is too harsh. If anything, MasterObjects' requested remedy, a curative instruction and an order deeming that Meta practiced the claim limitation, is too modest. On this factual record, most firms would stridently seek terminating sanctions. The remedy MasterObjects requests is narrowly tailored to address, at least in small part, the prejudice MasterObjects incurred given Meta's misconduct. For example, MasterObjects learned the truth just as discovery closed. It had no opportunity to do follow-on discovery; it had no opportunity to seek the relevant documents from Meta. MasterObjects will scramble, as it must, but Meta's failure to disclose manifestly hurt MasterObjects.

Meta concludes by suggesting that the Court award monetary sanctions instead. This is a matter vested in this Court's sound discretion, and the Court undoubtedly will do what the Court considers just.

Dated: August 8, 2022                  */s/ Spencer Hosie*

SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
505 Sansome Street, Suite 1575
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff
MasterObjects, Inc.*