1    LATHAM & WATKINS LLP
     Douglas E. Lumish (SBN 183863)
2    Jeffrey G. Homrig (SBN 215890)
     Clara Wang (SBN 321496)
3    140 Scott Drive
     Menlo Park, CA 94025
4    (650) 463-2600
     doug.lumish@lw.com
5    jeff.homrig@lw.com
     clara.wang@lw.com
6
     Joseph H. Lee (SBN 248046)
7    650 Town Center Drive, Suite 2000
     Costa Mesa, CA 94626
8    (714) 540-1235
     joseph.lee@lw.com
9
     Rachel Weiner Cohen (*pro hac vice*)
10   Tiffany C. Weston (*pro hac vice*)
     555 Eleventh Street, NW, Suite 1000
11   Washington, DC 20004
     (202) 637-2200
12   rachel.cohen@lw.com
     tiffany.weston@lw.com
13
     Paul Weinand (*pro hac vice*)
14   200 Clarendon Street
     Boston, MA 02116
15   (617) 880-4580
     paul.weinand@lw.com
16
     *Attorneys for Defendant Meta Platforms, Inc.*
17
                    UNITED STATES DISTRICT COURT
18                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
19

20   MASTEROBJECTS, INC.,                    Case No. 3:21-cv-05428-WHA (DMR)

21                        Plaintiff,

22          v.                               **DEFENDANT META PLATFORMS'**
                                             **NOTICE OF MOTION AND MOTION**
23   META PLATFORMS, INC.,                   **TO STRIKE EXPERT REPORTS**

24                                           **REDACTED VERSION**

25                        Defendant.         DATE: September 22, 2022
                                             TIME: 8:00 am
26                                           JUDGE: Hon. William Alsup

27

28

# TABLE OF CONTENTS

**Page**

I.      LEGAL STANDARDS ....................................................................................................... 2

II.     MASTEROBJECTS' EXPERT REPORT OF DR. WILLIAM R. LATHAM.............................. 3

        A.      MasterObjects' Damages Contentions and Interrogatory Response .................... 3

                1.      MasterObjects' New ███████████████ Damages Theory .......................... 4

                2.      MasterObjects' New ███████████████ License Theory........................ 4

        B.      MasterObjects Should Be Precluded From Relying On Its New
                Damages Theories.............................................................................................. 4

III.    MASTEROBJECTS' OPENING EXPERT REPORT OF JOHN PECK AND
        OPENING DECLARATION OF TREVOR SMEDLEY............................................................ 7

        A.      Overview of MasterObjects' Infringement Contentions and
                Interrogatory Responses..................................................................................... 8

                1.      Server-side Cache Limitations (Mr. Peck)................................................ 8

                2.      New Source Code For ███████████ (Dr. Smedley and Mr.
                        Peck) ..................................................................................................... 9

        B.      MasterObjects Should Be Precluded From Relying On Its New
                Infringement Theories...................................................................................... 11

IV.     MASTEROBJECTS' REPLY EXPERT REPORT OF JOHN PECK AND
        REPLY DECLARATION OF TREVOR SMEDLEY.............................................................. 12

V.      CONCLUSION............................................................................................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF AUTHORITIES**

**Page(s)**

### **CASES**

*Adobe Systems Inc. v. Wowza Media Systems*,
  No. 11-cv-02243-JST, 2014 WL 709865 (N.D. Cal. Feb. 23, 2014) ......................................11

*ASUS Computer Int'l v. Round Rock Research, LLC*,
  No. 12-cv-02099-JST (NC), 2014 WL 1463609
  (N.D. Cal. Apr. 11, 2014) ...............................................................................................2, 11

*Huawei Techs., Co. v. Samsung Elecs. Co.*,
  340 F. Supp. 3d 934 (N.D. Cal. 2018) ...................................................................................2

*KlausTech, Inc. v. Google LLC*,
  No. 10-cv-05899-JSW (DMR), 2018 WL 5109383
  (N.D. Cal. Sept. 14, 2018) ...................................................................................................12

*Looksmart Grp., Inc. v. Microsoft Corp.*,
  386 F. Supp. 3d 1222 (N.D. Cal. 2019) ............................................................................2, 5

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  No. 14-cv-03657-SI, 2019 WL 2863585 (N.D. Cal. July 2, 2019) .........................................6

*Netfuel, Inc. v. Cisco Systems, Inc.*,
  No. 5:18-cv-02352-EJD, 2020 WL 4381768 (N.D. Cal. July 31, 2020) .............................5, 6

*O2 Micro Int'l Ltd. v. Monolithic Power Sys.*,
  467 F.3d 1355 (Fed. Cir. 2006)............................................................................................12

*Twilio, Inc. v. Telesign Corp.*,
  No. 16-cv-06925-LHK (SVK), 2017 WL 5525929, (N.D. Cal. Nov. 17, 2017)..............4, 5, 6

### **RULES**

Fed. R. Civ. P.
  26(e)(1)(A)............................................................................................................................2, 5
  37(c)(1) ............................................................................................................................2, 5, 12

Local Rule
  3..............................................................................................................................................2
  3-1(c)......................................................................................................................................2
  3-8 .......................................................................................................................................2, 4

1

**NOTICE OF MOTION AND MOTION**

2

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

PLEASE TAKE NOTICE that at 8:00 am on September 22, 2022, or as soon thereafter as

4

counsel may be heard, in the Courtroom of the Honorable William H. Alsup, located 450 Golden

5

Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. ("Meta") will and hereby

6

does move the Court to strike the Expert Report of William R. Latham and portions of the July 11,

7

2022 Expert Report of John Peck regarding infringement, the July 10, 2022 Declaration of Trevor

8

Smedley, the August 3, 2022 Reply Declaration of Dr. Trevor Smedley, and the August 3, 2022

9

Reply Report of John Peck.  This motion is made pursuant to Patent L.R. 3-1 and 3-8, Federal

10

Rules of Civil Procedure 37(c)(1), and is based upon this Notice of Motion and Motion, the

11

supporting Memorandum, the Declaration of Tiffany Weston, filed herewith, and the exhibits

12

thereto, the other pleadings and materials already on file in this matter, and upon such further

13

argument and evidence as may be presented at the hearing of this motion.

14

15

Dated:  August 8, 2022                                    Respectfully submitted,

16

                                                                                   */s/ Jeffrey G. Homrig*
                                                                                   Jeffrey G. Homrig (SBN 215890)

17

18

                                                                                   *Attorney for Defendant Meta Platforms, Inc.*

19

20

21

22

23

24

25

26

27

28

1

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

2      This motion asks the Court to strike expert opinions espousing new damages and

3  infringement theories that MasterObjects failed to disclose in its Local Rule contentions or in

4  response to Meta's contention interrogatories.

5      MasterObjects served its Preliminary Damages Contentions on February 17, 2022, which

6  disclosed a single damages theory based on Meta's search ad revenue.  On July 11, 2022,

7  MasterObjects served the Expert Report of William R. Latham and Disclosure of MasterObjects

8  CEO Mark Smit that completely abandon its lone prior theory and disclose two entirely new ones:

9  (1) a royalty based on ██████████████████████████ and (2) a royalty based on the value of

10  a MasterObjects patent license ████████.  Both new theories are grounded on information that

11  was in MasterObjects' possession since before it served its Complaint.

12      Additionally, MasterObjects served its First Amended Infringement Contentions on

13  January 15, 2022.  The infringement contentions relied on a theory that certain functions on the

14  backend of the accused instrumentality, Typeahead, meet the server-side cache limitations.  The

15  contentions also relied on source code pincites only from the ███████████████ Typeahead

16  as meeting the claim limitations.  On July 11, 2022, MasterObjects served the Expert Report of

17  John Peck[1] disclosing a new theory for the server-side cache limitations.  MasterObjects also

18  served the Declaration of Trevor Smedley, which identified new source code for the ██████████

19  ███ frontend platforms.  Then, on August 3, 2022, MasterObjects served a Reply Declaration from

20  Dr. Smedley which advanced, for the first time, a new theory of infringement for the usability test;

21  namely that ██████████████████████████ as at least part of the "information in the

22  return message" from the claimed server system used by the client in the usability test.  No mention

23  of this ████████████ was made in MasterObjects' infringement contentions or in Dr.

24  Smedley's initial report.  Mr. Peck then relied on Dr. Smedley's discussion of this new code and

25  new theories to reach his opinions in his opening and reply reports about certain claim limitations,

26  most extensively for the usability test limitations.  Once again, these new theories and evidence

27

28  [1] MasterObjects served two expert reports from John Peck on July 11, 2022, both titled Expert Report of John Peck.  The report addressed in this motion is Mr. Peck's report addressing alleged infringement.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1 rely on information that was in MasterObjects' possession for months, if not years.  MasterObjects'

2 failure to disclose the theories or evidence it now seeks to rely on at trial is in direct violation of

3 the Court's scheduling order and the Local Rules.  Because MasterObjects' late disclosure is highly

4 prejudicial and not substantially justified, the Court should preclude MasterObjects from relying

5 on these submissions and the undisclosed theories they espouse.

6 **I.     LEGAL STANDARDS**

7    Patent Local Rule 3 sets forth the requirements for patent disclosures to streamline

8 discovery by "replacing the series of interrogatories that parties would likely have propounded

9 without it." *Huawei Techs., Co. v. Samsung Elecs. Co.*, 340 F. Supp. 3d 934, 945 (N.D. Cal. 2018).

10 These disclosure requirements are designed to "require parties to crystallize their theories of the

11 case early in litigation and to adhere to those theories once they have been disclosed." *Id.*

12    Patent Local Rule 3-1(c) requires that a party claiming patent infringement identify

13 specifically where and how each limitation of each asserted claim is found within the accused

14 instrumentalities.  It is well established that "a party may not use an expert report to introduce new

15 infringement theories [or] new infringing instrumentalities." *ASUS Computer Int'l v. Round Rock*

16 *Research, LLC*, No. 12-cv-02099-JST (NC), 2014 WL 1463609, at *1 (N.D. Cal. Apr. 11, 2014).

17    Patent Local Rule 3-8 requires that a party asserting infringement disclose each category

18 of damages it seeks, its theories of recovery, supporting facts and damages computations.  Parties

19 are required to "supplement or amend their damages contentions when a party's damages theory

20 shifts 'in some material respect.'" *Looksmart Grp., Inc. v. Microsoft Corp.*, 386 F. Supp. 3d 1222,

21 1231 (N.D. Cal. 2019) (citing Fed. R. Civ. P. 26(e)(1)(A)).  When a party violates its disclosure

22 obligations, the Federal Rules prevent that party from using that information . . . to supply evidence

23 on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

24 Fed. R. Civ. P. 37(c)(1).  "A party that plays fast and loose with its damages theories risks having

25 its whole theory struck, as well as additional sanctions." *Looksmart*, 386 F. Supp. 3d at 1232

26 (finding that party violated Rule 26(e) by failing to supplement its damages contentions, denying

27 motion to strike on the sole ground that the duty to supplement damages contentions had not *yet*

28 been settled in 2019, and holding that parties do have the duty to supplement).

## II.        MASTEROBJECTS' EXPERT REPORT OF DR. WILLIAM R. LATHAM

The Court should strike Dr. Latham's damages report because it abandons the only theory that MasterObjects disclosed during discovery and sets forth two brand new ones.

### A.        MasterObjects' Damages Contentions and Interrogatory Response

More than two years after the Complaint was filed in February 2020, MasterObjects served Damages Contentions that disclosed a single theory of recovery based on a reasonable royalty using Meta's search ad revenue and ██████████████ In those contentions, MasterObjects described the "principal damages issue" as "how to apportion this much larger revenue stream to the functionality added by the patents-in-suit."  *See* Exhibit 1 (MasterObjects' Preliminary Damages Contentions) at 2.  MasterObjects repeatedly stated that additional discovery *from Meta* was required to compute damages—specifically, depositions from Meta's 30(b)(6) witnesses and information related to Meta's revenues.  Nowhere in the Damages Contentions, or otherwise in discovery, did MasterObjects lay out alternative theories for a reasonable royalty analysis, and certainly not ones grounded in *MasterObjects'* own ████████████████████████ ████████—all of which have been in MasterObjects' possession long before it filed its lawsuit.

MasterObjects failed to substantively respond to Interrogatory No. 12, which sought all facts and evidence relating to its damages contentions.  *See* Exhibit 2 (MasterObjects' Response to Interrogatory No. 12).  Given the thin disclosures in these documents, Meta advised in its Responsive Damages Contentions that it would object to any efforts by MasterObjects to rely on evidence beyond the scope of its Damages Contentions:

> MasterObjects had sufficient information and time to provide compliant Damages Contentions and failed to do so. Meta objects to any efforts MasterObjects may make to rely on documents or information in its expert report that were produced prior to the service of MasterObjects' Damages Contentions, and reserves all rights to move to strike any such report and to seek any other appropriate relief.

*See* Exhibit 3 (Defendant's Responsive Damages Contentions) at 3-4.  Despite that warning, MasterObjects chose not to amend or supplement its Damages Contentions.

The "search ad" theory that MasterObjects disclosed in its damages contentions is nowhere to be found in Dr. Latham's report.  *See* Exhibit 4.  In its place are two new and different theories, discussed below.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1       **1.      MasterObjects' New ████████ Damages Theory**

2       In this new theory, Dr. Latham determines a royalty rate on a ███████

3 █████████████████████████████████████████████ before the

4 asserted patents issued.  *See* Exhibit 4 (Latham Rpt.) ¶ 107.  For support, MasterObjects submitted

5 Mr. Smit's declaration, setting forth information about █████████████

6 █████████████.  *See* Exhibit 5 (Smit Decl.) ¶¶ 26-44.  Dr. Latham relies

7 heavily on Mr. Smit's declaration to opine on the royalty rate and the parties' bargaining positions

8 at the time of the hypothetical negotiation.  He then applies this rate to Meta's usage data for the

9 accused product, Typeahead.  *See* Exhibit 4 (Latham Rpt.) ¶ 107.  Nowhere in its Damages

10 Contentions or otherwise in discovery did MasterObjects disclose the structure of, factual support

11 for, or any basis for computing damages under this theory.

12       **2.      MasterObjects' New ████████ License Theory**

13       In a second new theory, Dr. Latham contends that MasterObjects' prior license ████

14 ██████ is a comparable license and uses a series of factors to compare the relative bargaining

15 positions of each company to determine a reasonable royalty.  *See* Exhibit 4 (Latham Rpt.) ¶¶ 122-

16 140.  Again, nowhere in its Damages Contentions, or in response to other discovery, did

17 MasterObjects disclose that any of its prior licenses were comparable.  To the contrary, it

18 downplayed the importance of its prior licenses by repeatedly stating that ███████████

19 █████████████████████████████████████████████████

20 ██████  *See* Exhibit 1 (MasterObjects' Preliminary Damages Contentions) at 4-5.

21       **B.      MasterObjects Should Be Precluded From Relying On Its New Damages**
22 **Theories**

23       Both new theories rely on information that was in MasterObjects' possession and could

24 have been disclosed during fact discovery and in its Contentions.  And both rely on Mr. Smit's

25 "personal knowledge" as a foundation for Dr. Latham's damages calculations.  Nothing prevented

26 MasterObjects from disclosing its intent to rely on information that has long been in its possession.

27       MasterObjects was required to disclose its theories of recovery, factual support for those

28 theories, and computations of damages.  *See* Patent L.R. 3-8; *Twilio, Inc. v. Telesign Corp.*, No.

16-cv-06925-LHK (SVK), 2017 WL 5525929, at *2-3 (N.D. Cal. Nov. 17, 2017) ("The requirements of L.R. 3-8 could not be more clear: identify the theories of recovery; identify the known facts that support the theories; do the math."). MasterObjects simply failed to meet these requirements. It had ample opportunity to investigate its damages theory in the two years after it filed its complaint and provide a complete disclosure including any alternative theories of recovery, particularly given that MasterObjects' new theories are based on its own products discontinued more than a decade ago and a prior license agreement it entered into many years before it filed this lawsuit. Yet, in its Damages Contentions, MasterObjects blamed Meta's discovery as preventing a fulsome disclosure, even though Meta had produced nearly 75,000 documents responsive to MasterObjects' numerous overbroad and vague requests for production, and responded to nearly 30 interrogatories and more than 30 requests for admissions. Despite Meta's warning about the deficient Contentions (*see* Exhibit 3, Defendant's Resp. Damages Contentions at 3-4), MasterObjects did nothing to fix them.

MasterObjects also failed to satisfy its duty to supplement or amend its Contentions and discovery responses when its theory shifted "in some material respect." *Looksmart Grp*., 386 F. Supp. 3d 1222, 1231 (quoting Fed. R. Civ. P. 26(e)(1)(A)). While MasterObjects could have disclosed its new theories earlier, either as alternatives or as replacement theories when it decided to abandon its original theory, it simply failed to do so. Instead, it hid the ball by pointing only to its "forthcoming Opening Expert Report(s) Regarding Damages." *See* Exhibit 2, MasterObjects' Response to Meta's Interrogatory Nos. 12, 13.

MasterObjects' new theories, and Dr. Latham's opinions espousing then, should be excluded under Rule 37 unless MasterObjects can show that its late disclosure is "substantially justified and harmless." Fed. R. Civ. P. 37(c)(1); *see Netfuel, Inc. v. Cisco Systems, Inc.*, No. 5:18-cv-02352-EJD, 2020 WL 4381768, at *4-8 (N.D. Cal. July 31, 2020) (relying on Fed. R. Civ. P. 37(c)(1) to strike untimely served supplemental damages contentions). The record confirms that MasterObjects' failure to disclose these new theories was neither harmless nor justified. Meta has been relying on MasterObjects' previously disclosed damages theory for the last five months. Meta could have sought additional discovery from MasterObjects or third parties if MasterObjects

1   disclosed that it would be pursuing damages based on its two new theories.   Not only are

2   MasterObjects' current two theories entirely new, but it abandoned its sole prior theory, wasting

3   Meta's prior analysis and preparations.   Indeed, Dr. Latham expressly states that the ████████

4   ████████████████████████████████████████████   Exhibit 4 (Latham Rpt.) ¶ 39.

5   Consequently, now, more than two years into this case, Meta was forced to respond to an expert

6   report with brand new theories, with no chance to take discovery about them, ***in a sixteen day***

7   ***window***.   *See Netfuel, Inc.*, 2020 WL 4381768, at \*4-8 (granting motion to strike contentions

8   disclosed months after discovery closed).

9           Nor can MasterObjects justify its untimely disclosure.   The theories MasterObjects now

10   relies upon are not grounded upon some new information that MasterObjects only recently

11   discovered, but instead on information that has been in MasterObjects' possession from before it

12   filed its lawsuit in February 2020.   Furthermore, Meta produced nearly all of its documents in

13   2021, and Meta's witnesses related to metrics and search ads were deposed in March 2022.   *See,*

14   *e.g.,* Exhibit 6 (March 10, 2022 Email from MasterObjects Regarding Deposition Scheduling);

15   Exhibit 3 (Defendant's Responsive Damages Contentions) at 3-4.   Nothing precluded the

16   disclosure of MasterObjects' new theories of recovery in its Contentions, including the relevance

17   of its own products, price lists, or prior sales or license agreements or how they could be used to

18   calculate damages, and MasterObjects identifies no legitimate basis for completely abandoning its

19   sole previously disclosed theory at such a late stage in the case.

20           To the extent MasterObjects blames it failings on depositions of Meta witnesses or Meta's

21   supplementation of its metrics data production by agreement at the end of discovery, this is

22   baseless.   *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 WL

23   2863585, at \*15 (N.D. Cal. July 2, 2019) (explaining that defendant's production was not relevant

24   to plaintiff's contentions for a reasonable royalty); *see also Twilio*, 2017 WL 5525929, at \*3

25   (explaining that "it simply is not credible" that a plaintiff was "unable to quantify … the damages

26   it will seek at trial" more than a year after filing the complaint).   In the parties' meet and confer on

27   this dispute, MasterObjects suggested that it could not have disclosed these theories because Meta

28   made an agreed-upon supplementation of its metrics data at the close of discovery.   Not so.   As an

1    initial matter, Meta produced representative metrics data more than a year ago, on April 16, 2021.

2    MasterObjects could have calculated the types of metrics it now uses from this representative

3    production.  Indeed, Meta's Rule 30(b)(6) witness taught MasterObjects how to do so during the

4    deposition.  *See* Exhibit 7 (Ament Tr. at 38:1-22, 75:2-14, 76:3-5) (explaining how to calculate the

5    nonecho click rate and create a pivot table in Excel to aggregate the data).  Moreover, even if

6    Meta's metrics data helped computer the final damages *calculation*, it has little to do with the

7    underlying *theories of recovery*, which are based on *MasterObjects'* pricing or *MasterObjects'*

8    patent licenses.  Parties routinely disclose their damages theories in compliance with Local Rule

9    and Case Management Order deadlines, then update their calculations as more financial data

10   becomes available during discovery.  MasterObjects could have done that here.  Instead, it

11   strategically chose not to disclose theories of recovery based on its own product information and

12   downplayed the relevance of its prior licenses, notwithstanding that they were in MasterObjects'

13   possession all along.  And MasterObjects knew, or should have known, immediately following

14   depositions of Meta's witnesses whether a material change in its damages theory was necessary.

15   Those depositions were taken months ago and yet, rather than update its Damages Contentions

16   with its potential alternative theories, MasterObjects remained silent until it served opening reports

17   on July 11, 2022.

18         For these reasons, Meta respectfully asks this Court to strike the Expert Report of William

19   R. Latham and Disclosure of MasterObjects CEO Mark Smit and preclude any testimony about

20   the new theories set forth therein.

21   **III.    MASTEROBJECTS' OPENING EXPERT REPORT OF JOHN PECK AND**

22   **         OPENING DECLARATION OF TREVOR SMEDLEY**

23         The Court should strike two new infringement theories set forth in MasterObjects' opening

24   liability expert submissions because MasterObjects failed to disclose them as required by the Local

25   Rules or in response to Meta's source code contention interrogatory.

26

27

28

A.    **Overview of MasterObjects' Infringement Contentions and Interrogatory Responses**

On January 15, 2021, MasterObjects served its First Amended Infringement Contentions. After transfer to this District, the parties agreed that the infringement and invalidity contentions previously served were sufficient under the Patent Local Rules. MasterObjects did not serve amended or supplemental infringement contentions. Separate from the disclosures required by the Patent Local Rules, Meta also served on March 24, 2022, its Interrogatory No. 25, asking MasterObjects to "describe in detail on an element-by-element basis, where in the source code each of the asserted limitations can be found, including by providing pinpoint citations to the code identifying the location of each limitation, and by providing an explanation for how the cited code allegedly contains the limitation." *See* Exhibit 8, Meta Interrogatory No. 25. After meeting and conferring about MasterObjects' initial non-response, MasterObjects responded by citing to "MasterObjects' infringement contentions and forthcoming Opening Expert Report on Infringement." *See* Exhibit 9, MasterObjects' First Supplemental Response to Interrogatory No. 25. On July 11, 2022, MasterObjects served the Expert Report of John Peck on infringement that advanced a brand-new and previously undisclosed theory on what elements meet the server-side cache limitations. MasterObjects, on that same day, served the Declaration of Trevor Smedley that, for the first time, identified and cited to new routines in the source code for ▮▮▮▮▮ ▮▮▮▮▮ platforms that Mr. Peck relied on in his report.

1.    **Server-side Cache Limitations (Mr. Peck)**

In its First Amended Infringement Contentions, MasterObjects identified a "memcached-based query cache" on the Typeahead backend as the structure or function that meets the server-side cache limitation. *See, e.g.*, Exhibit 10, First Amended Infringement Contentions – Exhibit A at 46-49 ("The *global* service maintains an index of all the pages and applications on the site … Since this service's results are independent of the querying user, **we can save latency by storing recent results in a memcached-based query cache** ….") (emphasis original). Rather than rely on these disclosures, MasterObjects, through Mr. Peck, now contends that two entirely different structures meet the server-side cache limitations. *See* Exhibit 11, Peck Rpt. ¶¶ 91-114.

1   Specifically, Mr. Peck identifies two functionalities from Unicorn: ▮▮▮▮▮▮▮▮▮▮▮▮

2   ▮▮▮▮▮▮▮▮▮▮▮▮▮.[2]  *Id.*  Neither of these functionalities was previously identified as

3   satisfying the server-side cache limitations.  In fact, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4   ▮▮▮▮▮▮▮▮▮▮ are never cited in the First Amended Infringement contentions.  All discussion

5   about Unicorn ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

6   ▮▮▮▮.  *See, e.g.*, Exhibit 10, First Amended Infringement Contentions – Exhibit A at 109-

7   115.

8       As noted in Meta's response to MasterObjects' Motion for Sanctions, that motion arises

9   from MasterObjects' new "cache" theory.  *See* Dkt. 173.  MasterObjects cannot hide behind that

10  hastily thrown together motion as an excuse for its untimely disclosure of this new theory.  *See*

11  Dkt. 160.  MasterObjects has known, or should have known, about its new theory for months.

12  Meta produced documents and source code describing the Unicorn ▮▮▮▮▮▮▮▮▮▮

13  at the outset of this case, and MasterObjects used some of that material in a deposition more than

14  a year ago.  *See* Exhibit 12 (Ex. 7 to Kaver Dep. (FB0239691)); Exhibit 13 (6/22/21 Kaver Tr.) at

15  143:25-145:19; *see also* Dkt. 173 at 6-8 (detailing how MasterObjects' has been aware of Unicorn

16  and its components for nearly two years).  Moreover, Mr. Peck relies on deposition testimony from

17  Meta's technical witnesses that work on Typeahead, chief among them, William Pei.  *See* Exhibit

18  11, Peck Rpt. ¶¶ 91-114 (citing William Pei and Bobby Zhou deposition transcripts).  Mr. Pei's

19  deposition occurred on May 9, 2022, nearly six weeks before the close of fact discovery on June

20  17, 2022, yet MasterObjects failed to amend its discovery responses after this deposition.  At worst,

21  MasterObjects had the opportunity to supplement or otherwise amend its infringement contentions

22  or interrogatory responses to disclose its new theory.  But it chose not to do so.

23       **2.    New Source Code For ▮▮▮▮▮▮▮▮ (Dr. Smedley and Mr. Peck)**

24      MasterObjects' infringement contentions rely on source code only from the ▮▮▮▮▮▮ of

25  Facebook to assert that Typeahead practices the asserted claims.  *See* Exhibit 10, First Amended

26  Infringement Contentions – Exhibit A at 29-43 (citing web-based source code).   And when

27

28  [2] As noted in Meta's Opposition to MasterObjects' Motion to Sanctions, there is nothing called a "Recent Completed Search" component in Unicorn.  *See* Dkt. 173 at 5-6.  Mr. Peck appears to be referring to the ▮▮▮▮▮▮▮▮▮▮ Unicorn.  *See, e.g.*, Exhibit 11, Peck Rpt. ¶¶ 109-11.

1   responding to Meta's Interrogatory No. 25, which asked for any additional source code citations

2   that MasterObjects intends to rely on for its infringement contentions, MasterObjects provided no

3   further disclosure.  It simply incorporated its infringement contentions by reference and pointed to

4   its forthcoming expert reports.  *See, e.g.*, Exhibit 9, MasterObjects' First Supplemental Response

5   to Interrogatory No. 25.

6          Nowhere do MasterObjects' contentions cite to code from ███████████ Facebook

7   platforms for any claim limitation.  *Id.*  While the contentions purport to accuse ██████████

8   ███████████████████████████████████████████████████ the

9   attached claim charts mention ████████████████████ just once, in support

10  of dependent claim 3 for the '866 patent, and do not cite to any code files for ██████████, let

11  alone to specific lines of code, or provide any explanation of how the code for ██████████

12  allegedly satisfies the claim limitations.  Exhibit 14, First Amended Infringement Contentions at

13  1; Exhibit 10, First Amended Infringement Contentions - Exhibit A at 179 (citing generally to the

14  directories where the code for the ██████████ is found).  The only other cite in the contentions

15  that even arguably covers ██████████ is a generic cite to the directory locations for all

16  ██████████ code that does not identify the specific platforms or the relevant code for each

17  platform or explain how any of the claim limitations are supposedly satisfied.  *See id.*, Exhibit 10

18  at 8.  Based on MasterObjects' infringement contentions and interrogatory responses, it appeared

19  that MasterObjects was going to rely solely on the source code cited for the web platform to argue

20  infringement for all three platforms.

21         By contrast, Dr. Smedley's declaration cites for the first time to ██████████

22  code files and specific lines of code for various claim limitations.  Exhibit 15 (Smedley Decl.) ¶¶

23  13-20.  Mr. Peck in turn relies on Dr. Smedley's cites and description of source code from ██████

24  ██████████ to set forth a new theory about how the ██████████ Facebook platforms

25  allegedly satisfy the claims.  *See, e.g.*, Exhibit 11, Peck Expert Rpt. ¶¶ 55, 163-66 (citing the

26  ██████████

27         MasterObjects has long known that source code is critical for its infringement case.  *See*

28  Exhibit 16, June 3, 2020 Hr'g Tr. 4:6-10 (Counsel for MasterObjects stating: "So this is a case that

perhaps almost uniquely but more so than—than the average patent case is going to revolve around source code and source code discovery in order for the plaintiff to meet its burden of proof on the issue of infringement."). MasterObjects had access to Meta's source code since August 2020, inspected the code for nearly 800 hours before fact discovery closed (Exhibit 15 (Smedley Decl.) ¶ 7), and took multiple depositions of Meta software engineers who worked on the Typeahead product over the past two years. It had every opportunity to disclose its ███████████████ source code theories, including its new theories regarding what specific functionality in the ███ ████████████████████ platforms allegedly perform the claimed usability test. *See* Exhibit 15 (Smedley Decl.) ¶¶ 13-20. But MasterObjects stayed silent on what functionality in the iOS and Android frontend platforms, separate from the web frontend functionality, it would rely on, despite the iOS and Android frontend platforms being written in entirely different programming languages from the web frontend platform, and utilizing algorithms, routines, and data structures distinct from those used for the web frontend platform.

### B. MasterObjects Should Be Precluded From Relying On Its New Infringement Theories

MasterObjects' new infringement theories should be precluded under Rule 37, and their experts should not be permitted to testify about them. MasterObjects cannot use its expert report to introduce new infringement theories. *ASUS Computer*, 2014 WL 1463609, at *1. Mr. Peck cannot "theorize that certain functions satisfy a claim limitation, unless those functions were previously identified in [MasterObjects'] infringement contentions." *Adobe Systems Inc. v. Wowza Media Systems*, No. 11-cv-02243-JST, 2014 WL 709865, at *13 (N.D. Cal. Feb. 23, 2014). Nor can MasterObjects justify the non-disclosure. Mr. Pei specifically identified the location for both ██████████████ in his first deposition in 2020. Exhibit 17 (8/12/20 Pei Tr.) at 34:20-35:17 (identifying the location of ████ code for Typeahead), 62:2-64:10 (identifying the location of ██ code for Typeahead). Likewise, MasterObjects cannot credibly argue that the parties' agreement that the infringement contentions satisfy the Patent Local Rules saves MasterObjects' new theories—they were nowhere disclosed in those contentions. And in any case MasterObjects also failed to disclose the source code files it now relies on in its interrogatory

1   response.  MasterObjects also cannot show that its non-disclosure was harmless.  Meta relied on

2   MasterObjects' contentions and interrogatory responses to prepare its case, and it is prejudiced by

3   having to respond to new theories and evidence at this late stage.  On this record, MasterObjects'

4   failure to comply with the Federal and Local rules warrants exclusion.  *See O2 Micro Int'l Ltd. v.*

5   *Monolithic Power Sys.*, 467 F.3d 1355, 1368 (Fed. Cir. 2006) (relying on Fed. R. Civ. P. 37(c)(1)

6   the Court notes that "the court plainly had the authority to exclude the untimely [expert] reports");

7   *see also KlausTech, Inc. v. Google LLC*, No. 10-cv-05899-JSW (DMR), 2018 WL 5109383, at *4-

8   8 (N.D. Cal. Sept. 14, 2018) (recommending striking portions of expert reports with new

9   infringement theories and evidence); *ASUS Computer Int'l*, 2014 WL 1463609, at *2-4 (granting

10   a motion to strike portions of expert reports with new infringement theories).

11        For these reasons, Meta respectfully asks the Court to strike the portions of Mr. Peck's and

12   Dr. Smedley's expert reports that rely on the new theory for the server-side cache limitations

13   (Exhibit 11 (Peck Rpt.) ¶¶ 33, 40-45, 91-114), its new source code theory for iOS and Android

14   (Exhibit 11 (Peck Rpt.) ¶¶ 55, 163-66; Exhibit 15 (Smedley Decl.) ¶¶ 13-20), and any testimony

15   about these theories at trial.

16   ## IV.   MASTEROBJECTS' REPLY EXPERT REPORT OF JOHN PECK AND REPLY
17   DECLARATION OF TREVOR SMEDLEY

18        In its Case Management Order, the Court instructed the parties that "Reply reports must be

19   limited to true rebuttal and should be very brief.  They should not add new material that should

20   have been placed in the opening report…."  Dkt. 116 (Case Mgmt. Order) at ¶ 7.  On August 3,

21   2022, MasterObjects served the Reply Declaration of Dr. Trevor Smedley and the Reply Report

22   of John Peck.  Exhibit 18 (Smedley Reply Decl.); Exhibit 19 (Peck Reply Rpt.).  In these recent

23   documents, Dr. Smedley and Mr. Peck identified for the first time that MasterObjects was accusing

24   ███████████████████████████████████ as being the claimed information "in the

25   return message" that is required by the claims for the usability test.  Exhibit 18 (Smedley Reply

26   Decl.) at 1-2; Exhibit 19 (Peck Reply Rpt.) ¶ 6.  This new theory is not "true rebuttal" and it adds

27   "new material that should have been placed in the opening report."  Dkt. 116 (Case Mgmt. Order)

28

¶ 7.  As such, this new theory should be stricken under the Court's Case Management Order and under the Federal and Local Rules.

Specifically, in his reply declaration, Dr. Smedley argues for the first time that ███ ███████████████████████████████████████████████████████████████████████████ ████████████ and ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ Exhibit 18 (Smedley Reply Decl.) at 2.  In this way, Dr. Smedley attempts to identify ████████████████████████████████ ████████ that is used in the usability test.  *Id.*  Mr. Peck then states in his reply report "[a]s Dr. Smedley affirms, given basic HTTP and TCP/IP networking protocols, █████████████████ ███████████████████████████████████ uses in conducting a usability check."  Exhibit 19 (Peck Reply Rpt.) ¶ 6.  This theory identifying █████████████████████████████████████████ information was never before disclosed in MasterObjects' infringement contentions or in Dr. Smedley's or Mr. Peck's opening declaration or report.  *See, e.g.*, Exhibit 10 (First Amended Infringement Contentions - Exhibit A) at 76 (no mention of port numbers); Exhibit 11 (Peck Expert Rpt.) ¶¶ 154-74 (no mention of port numbers in discussion of usability test); Exhibit 15 (Smedley Decl.) ¶¶ 8-20 (no mention of port numbers in discussion of frontend code).  Accordingly, it violates the Court's Case Management Order and the Federal and Local Rules, and it should be stricken.

When confronted with this lack of disclosure, MasterObjects contended in a meet and confer letter that it "disclosed the importance of networking protocols in Meta's TA function in its first set of Invalidity [sic, Infringement] Contentions served in May 2020."  *See* Exhibit 20 (8/4/22 Hosie Ltr.).  But whether networking protocols are "important" is not the question—whether MasterObjects disclosed the ███████████████ is.

The letter's provided citations prove that the ████████████████ was never, in fact, previously disclosed.  From its Preliminary Infringement Contentions, the best MasterObjects can muster is the following:

The client object also tests the usability of the results in the return message by comparing the return message to a request identification maintained on the client object, and if usability is established, the results are returned to the software process.

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████ ██████████████████████
███ ████████ ████ ██████ ██████ █████████ ██████████ ███
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
█████████

Exhibit 20 (8/4/22 Hosie Ltr.) at 1 (quoting Exh. A to MasterObjects' Preliminary Infringement Contentions re claim 36 of the '024 patent-in-suit (emphasis in original)).[3]  On its face, this passage proves Meta's point: the quoted text never mentions port numbers at all.  It instead makes only nondescript and unspecified references to "additional information" including ████████████ ███████████████████████████████████████████████████████████ ███████████████████████████.  *Id.*  The sentences MasterObjects emphasizes with bold text do not reverse its lack of disclosure—though ██████████████████████, there are myriad other forms of "header information."  MasterObjects' contentions do nothing to specify what header information it has in mind and in no way identify ███████████ in particular.  Moreover, this same quoted section further obscures MasterObjects' meaning by referring to ████████████ which, it contends, also ███████████████████████████."  *Id.*  In short, at no point does this passage or any other in MasterObjects' infringement contentions disclose ███ ███████ as mapping to the response information in the usability test, and MasterObjects' equivocal references to a laundry list of information that "may" constitute a ████████ █████████ does nothing to cure this defect.

---

[3] MasterObjects then points to the identical passage from its Amended Infringement Contentions. *Id.*

1  Beyond its infringement contentions, MasterObjects also argues that Dr. Smedley's initial

2  declaration disclosed the ███████████ in the following passage:

3  ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
5  ████████████████████████████████████████
████████████████████████████████████████
7  ████████████████████████████████████████
████████████████████████████████████████
9  ████████████████████████████████████████
10 ███████████████

11 *Id.* (emphasis and ellipses in original) (quoting Exhibit 15 (Smedley Decl.) ¶ 8).  Here again, ███

12 ███████ are never mentioned and there is no disclosure of that theory anywhere in Dr. Smedley's

13 initial declaration.  On the contrary, Dr. Smedley references entirely different parameters here—

14 ██████████████████████████.  Nor does the broad reference to ████████████

15 █████████ that MasterObjects emphasized with bold text disclose this new theory; ████████

16 ███████████████████████████  In the end, Dr. Smedley's initial

17 report pointed away from █████████ as being the claimed response information in the usability

18 test, and did not provide a proper disclosure of this new theory as MasterObjects now alleges.

19  Finally, MasterObjects contends that Meta's expert, Dr. John Black, was "misleading" in

20 his description of a "private communication channel" and so Dr. Smedley's and Mr. Peck's new

21 opinions concerning the █████████ are "entirely proper rebuttal."  Exhibit 20 (8/4/22 Hosie Ltr.)

22 at 3.  But Dr. Black never mentioned a "private communication channel," and any such analysis

23 by Dr. Black would not excuse MasterObjects' failure to timely disclose its theories in any event.

24 MasterObjects has the burden of proving each and every limitation of its claims is met, and was

25 obliged to disclose those theories in its Contentions and opening reports.  It failed to do so, and its

26 new █████████ theory is untimely and should be stricken.

27

28

# V.     CONCLUSION

The Court should strike the Expert Report of Dr. Latham and Declaration of Mark Smit disclosing two new damages theories, and exclude any testimony regarding the same.  The Court should also strike portions of the initial and reply expert reports of John Peck and the initial and reply declarations of Trevor Smedley relying on new infringement theories and new source code citations, and exclude any testimony regarding the same.

***

Dated:  August 8, 2022                                         Respectfully submitted,

                                                              /s/ Jeffrey G. Homrig
                                                              Douglas E. Lumish (SBN 183863)
                                                              Jeffrey G. Homrig (SBN 215890)
                                                              Clara Wang (SBN 321496)
                                                              LATHAM & WATKINS, LLP
                                                              140 Scott Drive
                                                              Menlo Park, CA 94025
                                                              Tel:  (650) 328-4600
                                                              doug.lumish@lw.com
                                                              jeff.homrig@lw.com
                                                              clara.wang@lw.com

                                                              Joseph H. Lee (SBN 248046)
                                                              LATHAM & WATKINS LLP
                                                              650 Town Center Drive, 20th Floor
                                                              Costa Mesa, CA 92626-1925
                                                              Tel:  (714) 540-1235
                                                              joseph.lee@lw.com

                                                              Rachel Weiner Cohen (*pro hac vice*)
                                                              Tiffany C. Weston (*pro hac vice*)
                                                              LATHAM & WATKINS, LLP
                                                              555 Eleventh Street, NW, Suite 1000
                                                              Washington, D.C. 20004
                                                              Tel:  (202) 637-2200
                                                              rachel.cohen@lw.com
                                                              tiffany.weston@lw.com

                                                              Paul Weinand (*pro hac vice*)
                                                              LATHAM & WATKINS LLP
                                                              200 Clarendon Street
                                                              Boston, MA 02116
                                                              Tel:  (617) 948-6000
                                                              paul.weinand@lw.com

                                                              *Attorneys for Defendant Meta Platforms, Inc.*