LATHAM & WATKINS LLP
Douglas E. Lumish (SBN 183863)
Jeffrey G. Homrig (SBN 215890)
Clara Wang (SBN 321496)
140 Scott Drive
Menlo Park, CA 94025
(650) 463-2600
doug.lumish@lw.com
jeff.homrig@lw.com
clara.wang@lw.com

Joseph H. Lee (SBN 248046)
650 Town Center Drive, Suite 2000
Costa Mesa, CA 94025
(714) 540-1235
joseph.lee@lw.com

Gabriel K. Bell (*pro hac vice*)
Rachel Weiner Cohen (*pro hac vice*)
Tiffany C. Weston (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2200
gabriel.bell@lw.com
rachel.cohen@lw.com
tiffany.weston@lw.com

Paul Weinand (*pro hac vice*)
200 Clarendon Street
Boston, MA 02116
(617) 880-4580
paul.weinand@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*

**REDACTED VERSION**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MASTEROBJECTS, INC., Plaintiff, v. META PLATFORMS, INC., Defendant. | Case No. 3:21-cv-05428-WHA (DMR)<br><br>**DEFENDANT META PLATFORMS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY, NON-INFRINGEMENT, AND NO WILLFUL INFRINGEMENT**<br><br>Hearing Date: October 13, 2022<br>Time: 8 AM<br>Judge: Hon. William Alsup<br>Courtroom: 12, 19th Floor |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 8 AM on October 13, 2022, or as soon thereafter as counsel may be heard, in the Courtroom of the Honorable William H. Alsup, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Meta Platforms, Inc. ("Meta") will and hereby does move the Court for summary judgment of (1) invalidity, (2) non-infringement, and (3) no willful infringement.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the Declaration of Jeffrey Homrig filed herewith and the exhibits thereto, the pleadings and papers on file in this action, any other such matters upon which the Court may take judicial notice or which are incorporated by reference, the arguments of counsel, and any other matters that the Court may properly consider.

Dated: August 26, 2022

Respectfully submitted,

*/s/ Jeffrey G. Homrig*
Jeffrey G. Homrig

*Attorney for Defendant Meta Platforms, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. LEGAL STANDARDS .......... 1

III. MASTEROBJECTS' ASSERTED CLAIMS ARE INVALID BECAUSE THEY LACK PATENT ELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101 .......... 2

A. Background: The Asserted Patents .......... 2

1. The Specifications .......... 3

2. The Asserted Claims .......... 4

B. The Asserted Claims Are Ineligible Under § 101 .......... 5

1. The Asserted Claims Are Directed To The Abstract Idea of Providing Real-time Results To A User As The User Enters Text .......... 6

2. The Asserted Patent Claims Add Nothing Inventive .......... 12

3. No Material Fact Issue Precludes Finding Ineligibility .......... 14

IV. META DOES NOT INFRINGE BECAUSE TYPEAHEAD DOES NOT PRACTICE THE "ASYNCHRONOUS" LIMITATIONS .......... 15

V. META DOES NOT INFRINGE BECAUSE TYPEAHEAD DOES NOT PRACTICE THE "QUERY MESSAGE" LIMITATIONS .......... 18

A. The "Present Invention" Claimed by the Asserted Patents Sends Only the Changes to a Search String that Have Not Yet Been Sent to the Server .......... 18

B. Collateral Estoppel Dictates That Typeahead Does Not Infringe .......... 19

C. Ordinary Claim Construction Principles Compel the Same Result .......... 20

D. This Court Should Make its Own Assessment of these Limitations .......... 20

E. As Properly Construed, the "Query Message" Limitations Do Not Read on Typeahead .......... 21

VI. SUMMARY JUDGMENT IS WARRANTED IF MASTEROBJECTS' EXPERT, JOHN PECK, IS EXCLUDED .......... 21

VII. META HAS NOT WILLFULLY INFRINGED THE ASSERTED PATENTS .......... 22

A. MasterObjects Cannot Show that Meta Had Pre-suit Knowledge of the Asserted Patents .......... 22

B. MasterObjects Cannot Show that Meta Had Knowledge of Infringement and Specific Intent to Infringe ..................................................... 24

VIII. CONCLUSION........................................................................................................ 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Ackerman v. W. Elec. Co.*,
860 F.2d 1514 (9th Cir. 1988) ....................1

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................2, 5, 6, 7

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................1

*ASUS Computer Int'l v. Round Rock Research, LLC*,
2014 WL 146309 (N.D. Cal. Apr. 11, 2014) ....................16

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*,
28 F.4th 1247 (Fed. Cir. 2022) ....................22, 24

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....................14

*Bilski v. Kappos*,
561 U.S. 593 (2010)....................5

*Boston Sci. Corp. v. Nevro Corp.*,
560 F.Supp.3d 837 (D. Del. 2021)....................24

*Bridge & Post, Inc. v. Verizon Communs., Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ....................13

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018).................... *passim*

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................1

*Centricut, LLC v. Esab Grp., Inc.*,
390 F.3d 1361 (Fed. Cir. 2004)....................21

*Chamberlain Grp. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019)....................12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................8, 9

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
986 F.3d 1367 (Fed. Cir. 2021)....................10

*Electric Power Group, LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)....................10, 13

*Enco Sys., Inc. v. DaVincia, LLC*,
845 F. App'x 953 (Fed. Cir. 2021) ....................11, 13

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................9

*FairWarning IP, LLC v. Iatric Sys.*,
839 F.3d 1089 (Fed. Cir. 2016)....................10, 13

*Free Stream Media Corp. v. Alphonso Inc.*,
996 F.3d 1355 (Fed. Cir. 2021)....................10

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
579 U.S. 93 (2016)....................24

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017).................... *passim*

*Intellectual Ventures I LLC v. Symantec Corp.*,
838 F.3d 1307 (Fed. Cir. 2016).................... *passim*

*Kaufman v. Microsoft Corp.*,
2020 WL 364136 (S.D.N.Y. Jan. 22, 2020) ....................23

*In re Killian*,
--- F.4th ----, 2022 WL 3589496 (Fed. Cir. Aug. 23, 2022)....................10

*KlausTech, Inc. v. Google LLC*,
2018 WL 5109383 (N.D. Cal. Sept. 14, 2018) ....................16

*Life Technologies Corp. v. Biosearch Technologies, Inc.*
(3:12-cv-00852-WHA (N.D. Cal.), Dkt. 212) ....................21

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
814 F.3d 1343 (Fed. Cir. 2016)....................20

*M&C Innovations, LLC v. Igloo Prods. Corp.*,
No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018) ....................24

*MasterObjects, Inc. v. Amazon.com, Inc.*,
Case No. 3:20-cv-08103-WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ....................22, 23

*MasterObjects, Inc. v. Amazon.com, Inc.*,
Case No. 3:20-cv-08103-WHA, Dkt. 383 ....................17

*MasterObjects, Inc. v. Google, Inc.*,
4:11-cv-01054, 2013 WL 2319087 (N.D. Cal. May 28, 2013), *aff'd*, 582 F. App'x 893 (Fed. Cir. 2014) ....19

*Move, Inc. v. Real Estate Alliance Ltd.*,
221 F. Supp. 3d 1149 (C.D. Cal. 2016) ....24

*Nestle USA, Inc. v. Steuben Foods, Inc.*,
884 F.3d 1350 (Fed. Cir. 2018)....19

*Nystrom v. Trex Co.*,
424 F.3d 1136 (Fed. Cir. 2005)....20

*Ohio Willow Wood Co. v. Alps S. LLC*,
735 F.3d 1333 (Fed Cir. 2013)....19

*In re Papst Licensing Digit. Camera Pat. Litig.*,
778 F.3d 1255 (Fed. Cir. 2015)....21

*People.ai, Inc. v. SetSail Techs., Inc.*,
No. C 20-09148 WHA, 2021 WL 5882069 (N.D. Cal. Dec. 13, 2021) ....6

*Radware, Ltd. v. F5 Networks, Inc.*,
2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) ....23

*RecogniCorp, LLC v. Nintendo Co.*,
855 F.3d 1322 (Fed. Cir. 2017)....6, 7, 9, 13

*Regents of Univ. of Minn. V. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013)....19

*Simio, LLC v. Flexsim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020)....14

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
330 F. Supp. 3d 574 (D. Mass. 2018)....24

*Sonos, Inc. v. Google LLC*,
C 21-07559-WHA, -- F.Supp.3d --, 2022 WL 799367 (N.D. Cal. Mar. 16, 2022)....23, 24

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985)....23

*Synopsys, Inc. v. Mentor Graphics Corp.*,
839 F.3d 1138 (Fed. Cir. 2016)....13

*In re TLI Communications LLC Patent Litigation*,
823 F.3d 607 (Fed. Cir. 2016)....8

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
595 F.3d 1340 (Fed. Cir. 2010)....20

*Trs. Of Columbia Univ. v. Symantec Corp.*,
811 F.3d 1359 (Fed. Cir. 2016)....20

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017)....6, 13, 14

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
503 F.3d 1295 (Fed. Cir. 2007)....19, 20

*Yu v. Apple Inc.*,
1 F.4th 1040 (Fed. Cir. 2021)....15

**STATUTES**

35 U.S.C. § 101....1, 2, 5, 14

35 U.S.C. § 287(a)....22

**RULES**

Fed. R. Civ. P. 56(a)....1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Neither the facts nor the law support MasterObjects' allegations in this case, and summary judgment should be granted on several independent grounds. As demonstrated below, the evidence establishes that MasterObjects' four patents-in-suit each claim the abstract idea of providing real-time results to a user as the user enters text into a string, and merely recite doing so using a server—and so are invalid under 35 U.S.C. § 101. It also establishes as a matter of law that Meta does not practice the requirement that the client and server communicate "asynchronously." And the evidence establishes conclusively that Meta's Typeahead "queries" do not practice the claims as properly construed. Worse yet, MasterObjects' infringement theories rest upon expert opinions that fail to meet even basic standards of reliability. As explained in Meta's co-pending *Daubert* motion, MasterObjects' infringement (and damages) expert opinions should be excluded in their entirety, warranting summary judgment of non-infringement on this independent basis. And the indisputable record shows that Meta had neither the pre-suit knowledge of the asserted patents nor the specific intent to infringe them required for MasterObjects' claim of willfulness to survive.

On this record, no reasonable jury could find for MasterObjects on any of these issues.

## II. LEGAL STANDARDS

Under the Federal Rules, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable factfinder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The burden on the moving party is "discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). While the facts must be viewed in the light most favorable to the non-moving party, that party "is entitled to the benefit of only *reasonable* inferences that may be drawn from the evidence." *Ackerman v. W. Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988) (citation omitted).

## III. MASTEROBJECTS' ASSERTED CLAIMS ARE INVALID BECAUSE THEY LACK PATENT ELIGIBLE SUBJECT MATTER UNDER 35 U.S.C. § 101

The familiar two-step *Alice* framework governs whether computer-based patent claims are ineligible under § 101. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-27 (2014). Under *Alice*, claims are ineligible if they (1) are, at root, directed to an abstract idea notwithstanding their computer implementation and (2) add nothing significant (an inventive concept) to that idea. *Id.* MasterObjects' asserted claims fail that test. First, they are directed to the abstract idea of providing real-time results (*e.g.*, predictive searching or auto-complete information) in response to input from a user as the user continues to enter that input query in what the patent refers to as a "lengthening string." Even crediting the claims as referring to the predictive search or auto-complete technology described in the specification, the patents expressly admit that this functionality has long been "widely" performed by computers in numerous contexts—such as word processors, email programs, thesauruses, and drop-down lists—for "*years*." '024 patent, 6:40-66. And the patents' purported advance is simply moving that functionality to a server in a client-server system. But that does not make the claims any less abstract. *See, e.g., Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314-16 (Fed. Cir. 2016) ("*Symantec*") (moving computer virus screening to network location did not make claims non-abstract or eligible). Second, the claims add nothing inventive. The patents admit that the claims can be implemented using any combination of existing computer technology and existing computer network protocols.

Accordingly, MasterObjects' claims are squarely in the realm of ineligible subject matter, just like other claims for searching and retrieving information that the Federal Circuit has found ineligible as a matter of law. *See, e.g., BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 125 (Fed. Cir. 2017) ("*Erie*"). There are no material fact disputes that do, or could, change that outcome.

### A. Background: The Asserted Patents

Three patents (the '024, '628, and '866) share a common specification, and the fourth (the '073 patent) is also related, stemming from a common-ancestor patent. All four are directed to predictive searching, *i.e.*, providing auto-complete/type-ahead information.

**1. The Specifications**

The common specification explains that "auto-completion" or "type-ahead" functions—*i.e.*, the provision to a user of predictions of what that user is in the process of typing—"have been widely used throughout the computing world for many years." '024 patent, 6:29-32; *see id*. at 3:44-47 ("Many current systems provide a mechanism to auto-complete words"—"sometimes called 'type-ahead' or 'predictive text entry.'");[1] *see also* Ex. 1 (Black Rpt.) ¶ 105. "As a user inputs data into a field on a form, the auto-complete function analyzes the developing character string and makes intelligent suggestions about the intended data being provided," which "change dynamically as the user types additional characters in the string." *Id.* at 6:32-37. For example, most web browsers "automatically 'finish' the entry of a URL" as the user types, most e-mail programs such as Microsoft Outlook "automatically complete names and e-mail addresses" as the user types, and "most graphical user interfaces" "automatically" select a list item as the user types. *Id.* at 3:47-67. However, according to MasterObjects' patents, such applications are limited because "the data used to generate the suggestions [are] stored" locally at the same location as the application itself. *Id.* at 6:51-57. This is problematic, as data can become outdated (if it "frequently changes over time") or can "take a long time" to update (e.g., "for large selection lists"). *Id.* at 3:5-9.

The patents' purported solution is simply to perform the same functionality on a server: "The present invention … stores and retrieves the auto-complete suggestions from databases on the server." *Id.* at 6:57-59; *see id*. at 6:43-48 (invention purports to "enabl[e] the auto-complete data, logic and intelligence to reside on the server"); *id.* at 8:31-9:36; *see also* Ex. 1 (Black Rpt.) ¶ 106. Just like pre-existing auto-complete functions, the claimed invention provides responses (e.g., suggestions) as the user is typing, rather than waiting for the user to press the enter key (except now the server performs those functions). Accordingly, in the purported invention as explained in the specification, the server and client communicate back-and-forth "at any moment

[1] For simplicity, common specification citations are to the '024 patent, unless otherwise indicated.

in time" (i.e., "bidirectional[ly]" and "asynchronous[ly]").[2] *Id.* at 12:24-26; *see also* '073 patent, 2:38-40 ("[A] system and method is provided for asynchronously retrieving information over a network based on incremental input.").

The specification admits that no particular or improved computer technology is required: "The present invention can be implemented on any client and server system using any combination of operating systems and programming languages that support asynchronous network connections …." '024 patent, 30:58-62; *see also id.* at 31:3-9 (describing using existing network protocols, communication standards, and programming languages). Nor is any specific implementation or combination of components required—*e.g.*, the server "may be running on a single computer system" or multiple systems—and it need not have any particular "user interface." *Id.* at 12:47-48, 11:54-66. The specifications discuss optional software details that are unclaimed and, thus, irrelevant. *See, e.g.*, *id.* at 22:14-19 ("the model shown is purely an illustrative example of one embodiment of the invention and other models and implementations may be developed").

**2. The Asserted Claims**

The claims do not recite specific technological advances, just conventional computer components (*e.g.*, clients and servers) and generic functionality (*e.g.*, retrieving and sending data) that, on their face, are not even limited to predictive searching. MasterObjects asserts 10 independent and 33 dependent claims across the four patents.[3] Each independent claim recites a server providing "results" to a client based on "query messages" it receives from the client. Those return messages are based on input from a user sent to the server while the user is still in the process of entering a longer string of characters.

For example, independent claim 1 of the '024 patent recites:

---

[2] The Texas Court construed "asynchronous" in the claims as "each side of the communication is free to communicate without waiting for the other side." (Ex. 2 (11/29/20 Preliminary Constructions).)

[3] The asserted claims (with independent claims bolded) are: '024 patent, cls. **1**, 3, 5, 7, 10 ,11, 17-19, 20, 27-29, **32**, **35**, **36**, and **37**; '628 patent, cls. **1**, 10, **13**, 14, 15, 19, 22-24, **25**, and **26**; '866 patent, cls. **1**, 3, and 4-8; and '073 patent, cls. **1**, 3, 4, 7-10, and 12.

**1.** A system comprising:

a server system, including one or more computers, which is configured to receive query messages from a client object, the server system asynchronously receiving and responding to the query messages from the client object over a network;

the client object that, while a user is providing input comprising a lengthening string of characters, sends query messages to the server system;

whereby the query messages represent the lengthening string as additional characters are being input by the user; and

wherein the server system, while receiving said query messages, uses the input to query data available to the server system and send return message to the client object containing results in response to the input; and

wherein, upon receiving a return messages of the return messages from the server system, the client object tests the usability of the results in the in the return message by checking that the return message corresponds to the latest query, and if usability is established, the client object displays or returns at least some result data to the user.

The other ten asserted independent claims are similar with some insignificant variation including, for example, the addition of a "usability test" or a server-side "cache" in certain claims. *See* '024 patent, cls. 32, 35, 36, 37; '628 patent, cls. 1, 13, 25, 26; '866 patent at cl. 1; '073 patent, cl. 1. The asserted dependent claims recite limitations that (1) implement this same idea, using additional conventional hardware or software, (2) further describe the cache or usability check, or (3) are otherwise incidental.

**B. The Asserted Claims Are Ineligible Under § 101**

Abstract ideas—such as longstanding practices, human organizational concepts, and computerized concepts recited at a high level of generality—are ineligible for patent protection under § 101. *See, e.g., Alice Corp. Pty. Ltd. V. CLS Bank Int'l*, 573 U.S. 208, 216-18 (2014); *Bilski v. Kappos*, 561 U.S. 593, 601-602 (2010). Such ideas cannot be removed from the public domain and owned as private property because they are basic tools in the "storehouse of knowledge" that are "free to all … and reserved exclusively to none." *Bilski*, 573 U.S. at 602 (citation omitted). And this critical principle cannot be circumvented merely by limiting an idea to a particular technological environment (such as a server) or implementing it using generic or routine computer technology. *Alice*, 573 U.S. at 221-27.

At *Alice* step one, the Court determines whether the patent claims, at root, are directed to an abstract idea despite their computer features. *Id.* at 218; *see also, e.g.*, *People.ai, Inc. v. SetSail Techs., Inc.*, No. C 20-09148 WHA, 2021 WL 5882069, at *14 (N.D. Cal. Dec. 13, 2021) (claims abstract and ineligible despite "excess verbiage" and technical "jargon"). The Court "must evaluate the focus of the claimed advance over the prior art to determine if the claim's character as a whole is directed to [an abstract idea]." *Erie*, 850 F.3d at 1325 (citation omitted). Courts consider whether the claims recite a "specific implementation of a solution to a problem in the software arts"—"'a specific means or method' for improving technology"—or instead "an abstract end result" or "generalized steps to be performed on a computer using conventional computer activity." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326-27 (Fed. Cir. 2017). At step two, the Court determines whether the other claim elements, individually or collectively, add "significantly more" to the idea—something "inventive"—that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-22.

In addition, implementing an abstract idea in a "'particular … technological environment'" with conventional computer technology does not make the claims "'any less abstract'" and contributes nothing inventive. *Symantec*, 838 F.3d at 1314-16. Nor may claims recite "generic functional language to achieve [the] purported solutions" without claiming "*how* the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017).

The claims here are ineligible as they center on an abstract idea and add nothing inventive.

**1. The Asserted Claims Are Directed To The Abstract Idea of Providing Real-time Results To A User As The User Enters Text**

*Alice* step one considers whether the asserted claims are directed to an abstract idea. They are, as the following analysis confirms.

a. **The Independent Claims Are Directed To The Abstract Idea**

The independent claims all focus on the abstract idea of providing real-time results (such as auto-complete or type-ahead information) to a user as the user enters text into a string. For example, claim 1 of the '024 patent recites a "system" in which (1) a user inputs a "lengthening

string" of characters, on the user's "client" (*e.g.*, the user's device or application program), (2) a "server" receives the input and provides "results in response to the input" as the user is still typing (*i.e.*, the server communicates results without waiting for the user to press enter), and (3) the user's device displays the results (and this display depends on whether the results pass a usability test and so are known to be still consistent with the user's lengthening input string). *Supra* at III.A. The other independent claims focus on the same basic steps, although not all of them recite a usability test. '024 patent, cls. 1, 32, 35-37; '628 patent, cl. 1, 13, 25; '866 patent, cl. 1; '073 patent, cl. 1. Notably, the claims do not require any particular results—auto-complete, type-ahead, or otherwise. They merely require providing *any* (unspecified) results as the user types. The claims are directed to an abstract idea for three reasons.

First, providing real-time results to a user as the user types is abstract because it is a longstanding, commonplace concept *even in the computer context*. *See Symantec*, 838 F.3d at 1314 ("'fundamental … practice[s] long prevalent' are abstract ideas" (quoting *Alice*, 573 U.S. at 219)). The patents expressly admit that the functions of providing real-time results (such as auto-complete or type-ahead information) to a user as the user enters text into a string "have been *widely* used *throughout* the computing world *for many years*." '024 patent, 6:29-32 (emphasis added); *id*. at 3:44-47; *supra* at III.A.1; Ex. 1 (Black Rpt.) ¶¶ 102, 105. And the patents make clear that the only purported advance is moving that functionality to a server—the claims do not purport to improve the server or client devices themselves, instead they are just "taking advantage of server-side power." '024 patent, 6:44-45; *see supra* at III.A.1; Ex. 1 (Black Rpt.) ¶ 106. Merely implementing an abstract idea in a different technological environment (on the server)—without any particular improvement in the computer technology itself—does not make the claims "'any less abstract.'" *Symantec Corp.*, 838 F.3d at 1319; *see also RecogniCorp, LLC v. Nintendo Co., Ltd*., 855 F.3d 1322, 1326 (Fed. Cir. 2017) ("'[G]eneralized steps to be performed on a computer using conventional computer activity' are abstract").

The Federal Circuit's *Symantec* decision is squarely on point. There, certain claims recited performing computer virus screening in a network location, rather than on a client device, to ensure up-to-date information (*i.e.*, avoiding "the problem of … users having to periodically update their

virus screening software"). But the Federal Circuit held them to be abstract and ineligible. *Id.* at 1319-20. The court explained that "[p]erforming virus screening was a long prevalent practice in the field of computers, and, as the patent admits, performed by many computer users" using "software installed on their computers," and "performing [that] otherwise abstract activity on the Internet does not save the idea from being patent-ineligible." *Id.* The same is true here. As in *Symantec*, "the patent[s] admit[]" that providing real-time results (*e.g.*, auto-complete or type-ahead information) as the user types "was a long prevalent practice in the field of computers"—and is, thus, an abstract concept. *Id.* And, as in *Symantec*, performing that activity on a server, rather than on the users' client device, to ensure up-to-date information does not make them "'any less abstract.'" *Id.*; *see also, e.g., In re TLI Communications LLC Patent Litigation*, 823 F.3d 607 (Fed. Cir. 2016) (performing abstract classification idea on "server" in "a particular environment … does not make the claims any less abstract"); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766-73 (Fed. Cir. 2019) (shifting control from local device to server does not make claims less abstract).

Second, providing real-time results to a user as the user inputs characters is activity that humans can perform—another hallmark of abstraction. *See, e.g.*, *Symantec Corp.*, 838 F.3d at 1318. Indeed, "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with pen and paper." *Id*. For example, (1) one person can start writing letters (a "lengthening string" of characters), (2) as that person is writing, a second person can try to predict what the first person is writing, and (3) the second person can write down and display the predictions. And all of that can happen asynchronously—i.e., "each side of the communication is free to communicate without waiting for the other side." Ex. 2 (11/29/20 Preliminary Constructions). The ability to perform the claims' core concepts with pen and paper confirms that the claims are directed to an abstract idea, and implementing them in a technological environment does not make them less abstract. *See id.*

Third, the claims focus on "an abstract end result" implemented with "generalized steps to be performed on a computer using conventional computer activity," not on any particular

technological advance. *RecogniCorp*, 855 F.3d at 1326-27. The claims require nothing more than generic computer functions for receiving input, retrieving information from a database in response to the input, and displaying the results. The claims do not even recite particular results—they merely require providing any type of information (auto-complete, type-ahead, or otherwise) in response to the user's input. And the patents admit that the invention can be implemented on generic technological components—"any client and server system using any combination of operating systems and programming languages that support asynchronous network connections," '024 patent, 30:58-61, or any "conventional general purpose … computer," '073 patent at 38:53-55; *see also* Ex. 27 (Peck Tr.) at Vol. 3, 29:7-14 (admitting client and server of claims could be "a number of types of hardware implementations for each"); 30:16-22 (admitting claims are "not restrictive" as to which asynchronous communication protocol is used). Such admissions confirm that the claims are directed to an abstract idea, not any specific improvement in computer technology. *See, e.g.*, *RecogniCorp*, 855 F.3d at 1326; *see also ChargePoint*, 920 F.3d at 767 ("specification may … be useful in illuminating whether the claims are 'directed to' the identified abstract idea").[4]

The Federal Circuit routinely holds that similar claims reciting generic database and information processing functions are abstract and ineligible. For example, in *BSG*, the ineligible claims recited a "'self-evolving generic index' for organizing information stored in a database … using classifications, parameters, and values." 899 F.3d at 1283. Despite their seemingly "specific" computer implementations, the Federal Circuit held that the claims focused on longstanding practices for "guiding database users by presenting summary comparison information to users before they input data." *Id.* at 1286. In *Erie*, the two sets of ineligible claims recited (1) creating an index with XML tags and using that index to query and retrieve data, and (2) retrieving user-specific information from a remote, central location using pointers. 850 F.3d at 1326-31. There again, the claims were akin to "longstanding conduct" for querying and retrieving information from databases—"age-old practice[s] that existed well before the advent of

[4] The claims are, therefore, unlike the "specific…improvement[s] in computer capabilities"—particular solutions to computer specific problems—that have been found eligible at *Alice* step one. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

computers." *Id.* at 1327, 1330. In both cases, the claims purportedly improved database functionality by querying and receiving the data, but were nonetheless ineligible because they merely implemented abstract ideas with generic computer functionality. So too here.[5]

Moreover, the Federal Circuit has held that claims for collecting, analyzing, and displaying information are directed to abstract ideas and ineligible. For example, in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1351-52 (Fed. Cir. 2016), the ineligible claims recited "receiving … time stamped synchronized phasor measurements" that are "collected in real time," "detecting and analyzing events in real time," and "concurrent[ly]" displaying the results. And in *FairWarning IP, LLC v. Iatric Sys*., 839 F.3d 1089, 1097 (Fed. Cir. 2016), the ineligible claims recited collecting information about a user's records, analyzing it to detect potential misuse, and alerting the user. Here, as in those cases, the claims recite generic limitations for collecting user input, analyzing it to find responsive results, and displaying it to the user—and are therefore equally abstract.

The asserted independent claims are directed to the abstract idea providing real-time results to a user as the user enters text into a string and, thus fail *Alice* step one.

b. **The Dependent Claims Are Directed To The Abstract Idea**

The dependent claims are directed to the same abstract idea. The dependent claims fall into three categories: claims that (1) implement this same abstract idea on conventional hardware or software ('628 patent, cls. 24, 26; '866 patent, cl. 3; '073 patent, cl. 4), (2) recite a further limitation requiring a server-side cache or usability check ('024 patent, cls. 3, 5, 7, 17, 19, 20, 27, 28; '628 patent, cls. 10, 14, 15, 19, 22, 23; '866 patent, cls. 4-7; '073 patent, cls. 3, 7-10, 12),

---

[5] Even more-detailed database-related claims have been found ineligible. *See, e.g.*, *In re Killian*, --- F.4th ----, 2022 WL 3589496 (Fed. Cir. Aug. 23, 2022) (ineligible claims for looking up database information and providing results); *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1358-59 (Fed. Cir. 2021) (ineligible claims recited providing user-specific information to mobile device by circumventing sandbox security, using a "relevancy-matching server" that matches data based on "content identification data" and "content identification history"); *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1371-75 (Fed. Cir. 2021) (ineligible claims recited "application programming interface (API)," "graphical user interface," and "program database," for sending and receiving user-specific information via the internet from multiple systems).

and/or (3) recite limitations that are incidental to the purpose of the patent ('024 patent, cls. 10, 11, 18, 29).

For the first category, the claims merely recite the same abstract idea but implemented on nominally more specific, but still conventional, hardware or software. *See, e.g.,* '866 patent, cl. 3 ("[T]he client computer is a cell phone or personal organizer and the entry field is part of an application on said client computer."); *see also* Ex. 1 (Black Rpt.) ¶¶ 104, 109. But "claims are not saved from abstraction merely because they recite components more specific than a generic computer." *BSG*, 899 F.3d at 1286.

For the second category, neither a server cache limitation nor a usability check requirement makes the claims non-abstract. The claims do not purport to use the cache in a specifically-improved way, and instead merely use it in its conventional capacity (*i.e.,* to temporarily store data for easier retrieval). Ex. 1 (Black Rpt.) ¶ 112; *see also* Ex. 27 (Peck Tr.) at Vol. 3, 32:1-10 (admitting that claimed cache "could take on a number of different implementations"). Again, implementing the abstract idea using additional conventional computer components does not change the claims' focus. *See, e.g.*, *BSG*, 899 F.3d at 1286. Likewise, reciting a "usability check" (*i.e.*, making sure the results still match the lengthening user input string or latest query) before presenting the results to the user is part and parcel of the abstract idea of providing results to a user as the user enters text. *See supra* at III.B.1.a; *see also Enco Sys., Inc. v. DaVincia, LLC*, 845 F. App'x 953, 955 (Fed. Cir. 2021) (ineligible claims recited "synchronizing the caption data with one or more cues in the AV signal"); Ex. 1 (Black Rpt.) ¶ 111. It would make no sense to provide results that are not "usab[le]" in a broad sense—results that no longer match the user's input. And, though the claims require specific information from the server to be compared to specific information from the client, determining whether the results are "usable" generally requires nothing more than routine computer processing—e.g., matching data (the results) with other data (the user's current input string). Therefore, the inclusion of a "usability check" does not make it less abstract. *See BSG*, 899 F.3d at 1287 & n.1 ("the claim's focus must be something other than the abstract idea itself"; adding nominally "narrow[er]" limitations is insufficient).

For the third category, the claims recite limitations that are incidental to the claims' focus. *See* '024 patent, cls. 10 (combining the input string with additional information such as result sorting), 11 and 18 (identifying a user), 29 (pre-defined query). Thus, none of the dependent claims' limitations shift their focus—all are directed to the same abstract idea of providing results to a user as the user enters text (or, at best, providing predictive search or autocomplete suggestions to the user as she continues to type). Thus, like the independent claims, the dependent claims fail *Alice* step one.

**2. The Asserted Patent Claims Add Nothing Inventive**

At *Alice* step two, the Court must determine whether the claims add something "significant" "apart from" the abstract idea itself—an inventive concept that "transform[s] the abstract idea…into a patent-eligible application." *Chamberlain Grp. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019). MasterObjects' claims do not.

a. **The Independent Patent Claims Add Nothing Inventive**

The independent claims add nothing inventive to the abstract idea of providing results while the user is still typing. The claims merely recite generic computer components (a "server system," "client object," "cache") and functions (receiving input, retrieving information from a database in response to the input, comparing data, and displaying results). *See* '024 patent, cls. 1, 32, 35, 36, 37; '628 patent, cls. 1, 13, 25; '866 patent, cl. 1; '073 patent, cl. 1; *see also* Ex. 27 (Peck Tr.) at Vol. 3, 29:7-14 (admitting client and server of claims could be "a number of types of hardware implementations for each"); 30:16-22 (admitting claims are "not restrictive" as to which asynchronous communication protocol is used); 32:1-10 (admitting that claimed cache "could take on a number of different implementations"). The specifications here acknowledge that this requires no improvement in the computer technology itself. *See supra* at 3-4. Indeed, the patents admit that computers have long been used to provide real-time results to a user as the user enters text into a string. *Supra* at 3-4. Moreover, these are the same sorts of generic computer and database functions that the Supreme Court and Federal Circuit have found add nothing inventive. *See, e.g.*, *BSG*, 899 F.3d at 1283-85, 1289-91; *Erie*, 850 F.3d at 1328-32; *Symantec*, 838 F.3d at 1318-22; *supra* at 3-4. For example, the Federal Circuit has repeatedly held that limitations for

providing real-time information in response to input add nothing inventive. *See, e.g.*, *Electric Power*, 830 F.3d at 1351-52 (ineligible claims recited collecting and analyzing information "in real time" and "concurrent[ly]" displaying the results); *FairWarning*, 839 F.3d at 1097 (ineligible claims had the "ability … to collect and analyze disparate data sources in real time"). As the Federal Circuit has held, "collecting information, analyzing it, and displaying results is an abstract idea, even when undertaken in 'real-time.'" *Two-Way Media*, 874 F.3d at 1340 (quoting *Electric Power*, 830 F.3d at 1351-52).[6] The same is true here. Furthermore, neither the specifications nor the claims explain or require any specific implementation or improvement of database or communication technology—they merely use generic computer functionality to implement the abstract idea. *See supra* at Section III.B.1.

The asserted independent claims add nothing inventive to the abstract idea of providing real-time results while the user is typing and, therefore fail *Alice* step two.

b. **The Dependent Patent Claims Add Nothing Inventive**

The asserted dependent claims also add nothing inventive to that abstract idea—just as they added nothing non-abstract. *Supra* at Section III.B.1. The three categories of dependent claims, discussed above, require nothing but admittedly conventional computer technology (*see, e.g.*, Ex. 1 (Black Rpt.) ¶ 109), and are couched in results-oriented terms with no meaningful implementation details. The Federal Circuit routinely finds such limitations non-inventive as a matter of law. *See, e.g., BSG*, 899 F.3d at 1291 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *RecogniCorp*, 855 F.3d at 1327 ("Adding one abstract idea … to another abstract idea … does not render the claim non-abstract."); *FairWarning*, 839 F.3d at 1095-97 (claims reciting "provid[ing] notification" to users of security breach; "collecting, analyzing, and displaying" certain type of information; and "a user interface

---

[6] *See also Enco*, 845 F. App'x at 955 (ineligible claims recited "synchronizing the caption data with one or more cues in the AV signal"); *Bridge & Post, Inc. v. Verizon Communs., Inc.*, 778 F. App'x 882, 884 (Fed. Cir. 2019) (ineligible claims for "[t]ailoring advertisements based on real-time information about the user and their location"); *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (ineligible claims recited "asynchronous load function AL( ) and an assignment condition AD(Q) for an asynchronous data function AD( )").

for selection of at least one criterion" added nothing inventive). Therefore, all asserted claims fail to add anything inventive at *Alice* step two, and thus lack eligible subject matter under § 101.

**3. No Material Fact Issue Precludes Finding Ineligibility**

The Federal Circuit routinely finds claims ineligible at the summary judgment stage (e.g., as in *BSG*)—or even on the pleadings (e.g., as in *Erie*)—as a matter of law. *See also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018) ("Patent eligibility has in many cases been resolved on motions to dismiss or summary judgment. … When there is no genuine issue of material fact …, this issue can be decided on summary judgment as a matter of law."). That is the proper outcome here, too. To the extent there are claim construction disputes (*see infra* Section V), those disputes do not affect the outcome here. There are no material fact disputes, and the patents establish that the claims are directed to an abstract idea and add nothing inventive, as discussed.

The expert report of MasterObjects' expert, Mr. Peck, does not change that conclusion or create any material fact issue. First, most of his testimony centers on the abstract idea itself (adding predictive search to the claims), which again "cannot supply the inventive concept." *Simio, LLC v. Flexsim Software Prods., Inc.*, 983 F.3d 1353, 1363 (Fed. Cir. 2020); *BSG*, 899 F.3d at 1290. For example, he states that "the focus of the claimed advance … is … asynchronous communication between the client and the server system." Ex. 26 (Peck Validity Rebuttal Rpt.) ¶ 166; *see id*. at ¶¶ 168-69, 174. But asynchronous communication—*i.e.*, not having to wait to for the other side before communicating—and leveraging that approach to provide results to the client while the user is still typing (or in real time) *is* the abstract idea. *Supra* at Section III.B.1. Moreover, numerous claims have been found ineligible despite providing real time information in this way. *Supra* at Section III.B.1.a. Second, Mr. Peck's testimony concerning the use of caches and usability results (*id.* at ¶¶ 170-72, 175-77) likewise does not make the claims eligible, for the same reasons discussed with respect to the dependent claim limitations. Third, at most, his testimony goes to whether the claims are different from (i.e., novel or non-obvious over) prior art systems. *See id.* ¶ 176 ("the claimed usability tests are novel and non-obvious over the prior art"). But "[e]ligibility" is a "separate inquir[y]" from "novelty" and non-obviousness. *Two-Way Media*,

874 F.3d at 1340 (district court properly ignored expert testimony on novelty); *see also, e.g.*, *Yu v. Apple Inc.*, 1 F.4th 1040, 1045-46 (Fed. Cir. 2021) (claims ineligible even assuming novelty over prior art, and expert testimony could not change that).

The claims are ineligible as a matter of law, as in *Symantec*, *BSG*, and *Erie*.

## IV. META DOES NOT INFRINGE BECAUSE TYPEAHEAD DOES NOT PRACTICE THE "ASYNCHRONOUS" LIMITATIONS

The accused Typeahead feature does not permit asynchronous communication between the client and server, as each of the asserted claims requires.[7] Prior to transfer, the Texas Court adopted one of the constructions proposed by MasterObjects for the terms "asynchronous" and "asynchronously," construing them to mean that "***each side*** of the communication is free to communicate without waiting for the other side." (Ex. 2 (11/29/20 Preliminary Constructions) (emphasis added).[8] This is consistent with the specification, which repeatedly describes a "push" embodiment in which the server automatically sends data to the client without first receiving a client request. *See* '024 patent at 6:15-19 ("Data can also be presented to a client without user input, i.e., the data are automatically pushed to the client."); *id.* at 8:55-57 (same); *id.* at 17:54-57 ("In other embodiments, Questlets [user interface components of the preferred embodiment] can be used to display current stock quotes, news flashes, advertisements, Internet banners, or data from any other real-time data push Service."). But Meta's Typeahead server does not use a push approach. It is not "free to communicate" with the client "without waiting for the other side" as required by the construction, and MasterObjects has not presented any evidence to show that it is.

MasterObjects' expert, John Peck, bases his infringement opinion solely on Typeahead queries and responses in which the server waits for a request from the client, and then responds to that request. *See* Ex. 3 (Peck Infringement Rpt.) ¶¶ 57-64. For example, Mr. Peck describes a user in the process of typing the search string "roxy music." *Id.* As the user is typing, the client

---

[7] *See, e.g.*, Ex. 4 ('024 patent) at independent cls. 1 ("asynchronously"), 32 ("asynchronous"), 35 ("asynchronously"), 36 ("asynchronously"), 37 ("asynchronously"); Ex. 5 ('628 patent) at independent cls. 1 ("asynchronously"), 13, ("asynchronously") 25 ("asynchronously"); Ex. 6 ('866 patent) at independent cl. 1 ("asynchronously"); Ex. 7 ('073 patent) at independent cl. 1 ("asynchronously").

[8] While Meta maintains that its proposed construction of "asynchronous" is correct, and also warrants summary judgment on these facts, it does not ask the Court to revisit this construction.

sends the query "ro" via HTTP and receives a response from the server. *Id.* ¶ 67. For each additional letter that is added to the search string, the client issues a new request to the server (*i.e.*, "rox," "roxy"). Nowhere does MasterObjects show that a relevant Meta ***server*** communicates with the client without first receiving a request. *See* Ex. 8 (Black Rebuttal Rpt.) ¶ 58. Indeed, Dr. Smedley (upon whose source code review Mr. Peck relied), admitted that in the code he reviewed, a Typeahead query is sent before a response is received. Ex. 17 (Smedley Tr.) at 154:15-22. This makes sense. HTTP is a request/response protocol, not a push protocol, and an HTTP server cannot spontaneously push information to the client without first receiving a request. *Id.* ¶ 59. Because it uses this protocol, the server for Meta's Typeahead feature *cannot* communicate with the client without first receiving a request and so it does not meet the Court's construction that "***each side*** of the communication is free to communicate without waiting for the other side." *See also* Ex. 8 (Black Rebuttal Rpt.) ¶¶ 45, 50. Nonetheless, Mr. Peck opines—in wholly conclusory fashion and without explanation in his report—that the "server system asynchronously receives and responds to query messages asynchronously." Ex. 3 (Peck Infringement Rpt. ¶ 65). These statements cannot be supported by Dr. Smedley's source code review—Dr. Smedley admitted that he did not even attempt to answer the question of whether a server can send a response before it receives a request. Ex. 17 (Smedley. Tr.) at 154:23-155:11.

In deposition Mr. Peck sought to supplement his opinions with an undisclosed theory that the server communicates asynchronously because "the client server takes place in relation to multiple communication channels that are each communicating with each other such that the— there's no synchronization between independent channels." *See, e.g.*, Ex. 9 (Peck Tr.) at Vol. 1, at 162:21-164:2. As an initial matter, this new theory should be stricken as untimely—it was never disclosed in MasterObjects' infringement contentions or Mr. Peck's expert report, and is yet another example of unfair surprise to pile on top of those set forth in Meta's pending motion to strike. Dkt. 178 at Section III; *see, e.g.*, *see, e.g.*, *KlausTech, Inc. v. Google LLC*, 2018 WL 5109383, at *4-8 (N.D. Cal. Sept. 14, 2018) (recommending striking portions of expert reports with new infringement theories); *ASUS Computer Int'l v. Round Rock Research, LLC*, 2014 WL 146309, at *2-4 (N.D. Cal. Apr. 11, 2014) (granting motion to strike portions of expert reports

with new infringement theories). Moreover, this belated argument fails on the merits: there is no mention of any such "independent channel"-based asynchronicity in any of the claim language, the specification, or the construction issued by the Texas court, and MasterObjects has failed to show that it would satisfy the actual construction that has been entered.

In its case against Amazon, MasterObjects made yet a different argument that ***other*** claim language limits when the communications must be asynchronous. *MasterObjects, Inc. v. Amazon.com, Inc.*, Case No. 3:20-cv-08103-WHA, Dkt. 383 at 11 (asserting that "explicit language in the claims say that a client must start a search session, and then communications are asynchronous ***within that search session***") (emphasis in original). Should MasterObjects change its theory for a third time and shift to that same argument in this case, that argument should be rejected as untimely and on the merits. The claims do not say that client-communications need only be asynchronous during a "search session" (a term the claims never use).[9] Instead they simply require that the client and server communicate asynchronously, which, as construed, requires the server to be free to communicate with the client without first waiting for the client (and for the client to be free to do the same). Ex. 2 (11/29/20 Preliminary Constructions); *see also, e.g.*, '024 patent, cl. 1 ("the server system asynchronously receiving and responding to the query messages from the client object"); '628 patent, cl. 1 ("the client object asynchronously receiving return messages"); '866 patent, cl. 1 ("asynchronously sending, by the server system to the client computer"); '073 patent, cl. 1 ("asynchronously receiving, on the client computer").

Because the evidence confirms that Meta's Typeahead server is not "free to communicate without waiting" for the client to first send a request, Typeahead does not practice the "asynchronous" limitations and cannot infringe any of the claims. Summary judgment of non-infringement is warranted.

---

[9] The claim language to which MasterObjects points in *Amazon* (*e.g.*, "while a user is providing input…" in '628 patent, Claim 13) refers to the user typing input into the search bar, not to the *client-server* communication.

## V. META DOES NOT INFRINGE BECAUSE TYPEAHEAD DOES NOT PRACTICE THE "QUERY MESSAGE" LIMITATIONS

As set forth in the Joint Case Management Statement (Dkt. 114) and in Meta's Notice Regarding Claim Construction (Dkt. 169), the construction of the "query message" terms in each asserted claim remains at issue in this case and in the co-pending *Amazon* case.[10] If the Court construes these terms as proposed by Meta and Amazon, summary judgment inexorably follows: there is no dispute, and MasterObjects' expert unequivocally concedes, that the accused Typeahead feature does not send to the server only the ***changes*** in what the user has input into a growing search string. *See, e.g.*, Ex. 3 (Peck Infringement Rpt.) ¶¶ 80-82; Ex. 10 (Peck Tr.) at Vol. 2, 55:2-15. Accordingly, the accused Typeahead feature does not practice the "query message" limitations, and summary judgment should be granted.

### A. The "Present Invention" Claimed by the Asserted Patents Sends Only the Changes to a Search String that Have Not Yet Been Sent to the Server

As explained in greater detail in Meta's claim construction briefing, Dkts. 54, 57, 59, the "core of the invention" as described in the specifications is a client-server system in which the client sends only updates to the lengthening string as they are input by a user, and does not send the entire query string including previously-sent characters. *See* Ex. 11 (9/26/2012 van den Oord Tr.) at 57:4-16; *see also id.* at 63:11-18, 65:5-66:3, 85:10-86:15, 94:23-95:18. Specifically, the Asserted Patents describe a "session-based" protocol, which, to save on processing and bandwidth usage, has the client send to the server only new characters entered by the user into a search string, rather than re-sending all of the previous characters typed by the user plus any new characters that were entered after the prior transmission to the server. '024 Patent at 8:31-38, 18:45-19:33, 19:46-66, Fig. 4; *see also* Ex. 7 ('073 patent) at 8:31-46. Thus, in the purported invention, when a user is typing "apple" into a search string, the client may send "a," then "p," then "p" to the server, or "a" then "pp," but never resends characters such as "a" then "ap" then "app." *Id.*

---

[10] *See, e.g.*, Ex. 4 ('024 patent) at independent cls. 1 ("query messages"), 32 ("query messages"), 35 ("query messages"), 36 ("query messages"), 37 ("query messages"); Ex. 5 ('628 patent) at independent cls. 1 ("query messages"), 13 ("query messages"), 25 ("query messages"); Ex. 6 ('866 patent) at independent cl. 1 ("request message"); Ex. 7 ('073 patent) at independent cl. 1 ("a string representing an incomplete search query").

This protocol is not merely an exemplary embodiment. *See, e.g.*, Ex. 4 ('024 patent) at 20:14-17 ("[T]he protocol of the ***present invention*** provides a number of messages that allow the Client Quester to send just the changes to the input buffer, instead of sending the entire input buffer."); Ex. 5 ('628 patent) at 20:30-33; Ex. 6 ('866 patent) at 20:38-41; Ex. 7 ('073 patent) at 1:24-30 (incorporating, *e.g.*, Ex. 12 ('529 patent) at 20:11-14). Rather, it is an integral aspect of the invention itself, and the only embodiment disclosed in the specification. *Regents of Univ. of Minn. V. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) ("When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (quoting *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)).

**B. Collateral Estoppel Dictates That Typeahead Does Not Infringe**

The scope dictated by the specifications of MasterObjects' patents has already been determined by a prior court in this District. *See MasterObjects, Inc. v. Google, Inc.*, 4:11-cv-01054, 2013 WL 2319087, at *12 (N.D. Cal. May 28, 2013), *aff'd*, 582 F. App'x 893 (Fed. Cir. 2014). In *Google*, Judge Hamilton held that the parent patent to the Asserted Patents in this case was limited by its specification such that "each query consists of only the changes to the input string that were not sent in any previous consecutive query." 2013 WL 2319087, at *12. Based on that construction, which the Federal Circuit affirmed, the parties stipulated to non-infringement. *Id.*; *see also* Ex. 15 (Stipulated Final Judgment, *Google*, Dkt. 189). While the *Google* case involved somewhat different claims, "collateral estoppel is not limited to patent claims that are identical. Rather, it is the identity of the ***issues*** that were litigated that determines whether collateral estoppel should apply." *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2018) (emphasis in original) (citations omitted); *see also Ohio Willow Wood Co. v. Alps S. LLC*, 735 F.3d 1333, 1342 (Fed Cir. 2013). And here, the issue is the same: does the specification common to all of the patents limit the scope of the "query message" limitation to sending only the changes that have not yet been sent to the server?

It does. The *Google* Court's decision was based on the same exact specification as the asserted '024, '628, and '866 patents, and which is also incorporated into the '073 patent. As MasterObjects itself acknowledged, the *Google* Court "concluded that the claims ***were so limited***

***by the specification***." Ex. 13 (MO Appeal Brief) at 15). The asserted claims here are subject to the same constraints of the same specification as the claims at issue in *Google*. Thus, collateral estoppel requires that "each query consist of only the changes to the input string that were not sent in any previous consecutive query"—which Typeahead simply does not do. *See e.g.*, Ex. 3 (Peck Infringement Rpt.) ¶¶ 80-82 (describing how Typeahead sends the full text string).

### C. Ordinary Claim Construction Principles Compel the Same Result

The result is the same under ordinary claim construction principles. As discussed above in Section V.A and in Meta's claim construction briefing (Dkts. 54, 59), the consistent and singular description, and the usage of the "present invention" in the common specification, requires that the claims be construed to require the client to send to the server only changes to the input string that were not sent in any previous transmission. *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) ("When a patentee describes the features of the 'present invention' as a whole, he implicitly alerts the reader that this description limits the scope of the invention."); *see also, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1353 (Fed. Cir. 2010) (a "reference to the 'present invention' strongly suggests" that the patentee is not describing a mere embodiment); *Verizon*, 503 F.3d at 1308 (same); *Trs. Of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363-64 (Fed. Cir. 2016) ("[A] patent applicant need not expressly state 'my invention does not include X' to indicate his exclusion of X from the scope of the patent because the patentee's choice of preferred embodiments can shed light on the intended scope of the claims."); *Nystrom v. Trex Co.*, 424 F.3d 1136, 1145 (Fed. Cir. 2005) (construing "board" to require a wooden board because "Nystrom consistently used the term 'board' to refer to wood cut from a log.").

### D. This Court Should Make its Own Assessment of these Limitations

The parties briefed this issue to the Texas Court before transfer. *See* Dkts. 54-59. The Court issued a list of tentative rulings that adopted MasterObjects' proposed "plain and ordinary meaning construction," held a hearing, and stated at the end of the hearing that it was maintaining its tentative rulings. Dkt. 69 ("The Court kept his preliminary construction."); Ex. 14 (11/30/20

Hrg Tr.) at 28:11-13. The Court shed no light on its reasoning or the grounds on which it made those rulings during the hearing, and issued no written claim construction order.

A court's claim construction rulings are not static. "[A] district court may (and sometimes must) revisit, alter, or supplement its claim constructions . . . to the extent necessary to ensure that final constructions serve their purpose of genuinely clarifying the scope of claims for the finder of fact." *In re Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d 1255, 1261 (Fed. Cir. 2015) (internal citations omitted). MasterObjects has argued that a formal reconsideration motion is required (Dkt. 114), citing *Life Technologies Corp. v. Biosearch Technologies, Inc.,* (3:12-cv-00852-WHA (N.D. Cal.), Dkt. 212), where the Eastern District of Texas entered a written claim construction order explaining the rationale for its adopted constructions. But, here, the Western District of Texas documented no such analysis—it simply listed its tentative ruling and adopted it orally without explanation. *See* Dkt. 71 at 28:10-14. There is thus no record through which to address the undisclosed basis for the Texas Court's ruling. This further highlights the need for this Court to consider and issue an opinion regarding the proper construction of the terms.

### E. As Properly Construed, the "Query Message" Limitations Do Not Read on Typeahead

There is no dispute that the accused Typeahead feature does not send "only the changes to the input string that were not sent in any previous query." *See, e.g.,* Ex. 3 (Peck Infringement Rpt.) ¶¶ 80-82; Ex. 10 (Peck Tr.) at Vol. 2, 55:11-15; *see also* Ex. 15 (Stipulated Final Judgment, *Google*, Dkt. 189); Ex. 16 (Opp. to Amazon's MSJ) (Dkt. 383) at 6 ("No search system does this"). Thus, Typeahead cannot practice the "query message" limitations, as properly construed, and summary judgment of non-infringement is warranted.

## VI. SUMMARY JUDGMENT IS WARRANTED IF MASTEROBJECTS' EXPERT, JOHN PECK, IS EXCLUDED

Meta has concurrently moved to exclude Mr. Peck's infringement opinions because they fail to provide fair notice of Mr. Peck's opinions and the reasons behind them, set forth opinions unsupported by evidence in the record, and fail to apply the Court's claim constructions, among other problems. *See* Meta's co-pending *Daubert* Motion. Mr. Peck is MasterObjects' only expert on infringement. *See* Ex. 17 (Smedley Tr.) at 53:19-54:5; 234:11-13 (admitting that Mr. Smedley

is not offering any opinion on infringement). If the Court grants Meta's motion to exclude, summary judgment of non-infringement is warranted because MasterObjects will not have expert testimony to offer on the question of infringement and will be unable to meet its burden of proof. *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004).

## VII. META HAS NOT WILLFULLY INFRINGED THE ASSERTED PATENTS

MasterObjects' claim that Meta willfully infringed the Asserted Patents is unsupported by evidence sufficient for the claim to proceed to trial. MasterObjects must show that Meta had both knowledge of the Asserted Patents before the filing of its Complaint *and* knowledge of infringement. *MasterObjects, Inc. v. Amazon.com, Inc.*, Case No. 3:20-cv-08103-WHA, 2021 WL 4685306, at *2 (N.D. Cal. Oct. 7, 2021) ("Willfulness requires both knowledge of the infringed patent and knowledge of infringement."); *see also BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Organisation*, 28 F.4th 1247, 1275 (Fed. Cir. 2022) ("To establish willfulness, a patentee must show that the accused infringer had a specific intent to infringe at the time of the challenged conduct."). But it can show neither, and summary judgment is warranted.

### A. MasterObjects Cannot Show that Meta Had Pre-suit Knowledge of the Asserted Patents

There is no genuine question that Meta did not have knowledge of the Asserted Patents prior to the filing of MasterObjects' Complaint. MasterObjects admits that it never provided notice of the Asserted Patents prior to filing suit. *See* Ex. 19 (06/01/21 MO's Resp. to RFAs 1, 2) ("MasterObjects admits that it did not itself communicate to Facebook MasterObjects' allegations that Facebook infringes the patents-in-suit prior to filing MasterObjects' February 5, 2020 Complaint."); *see also* Stip. re Pre-Suit Damages (Dkt. 133) (stipulating that "MasterObjects did not provide Meta notice under 35 U.S.C. § 287(a) of the asserted '024 and '628 patents before it filed suit"). Discovery confirmed that Meta did not have knowledge of the Asserted Patents. *See* Ex. 20 (von Bargen 30(b)(6) Tr.) at 11:4-12, 12:5-11 (testifying that Meta learned of the Asserted Patents when the complaint was filed). And no internal documents referencing the Asserted Patents were found during discovery. *See* Ex. 21 (4/21/21 Hr'g Tr.) at 12:25-13:21.

MasterObjects' allegation of pre-suit willfulness hinges on the allegation that citations to ***related*** patents and the 2012/0284329 ***application*** that issued as the '024 patent during prosecution of Meta's own patents shows that Meta was on notice of MasterObjects' patent portfolio. *See* Am. Compl. (Dkt. 73) ¶¶ 33-38; Ex. 22 (6/9/21 MO's Resp. to Rog 2) at 11-13, 19-27. This contention fails, both legally and factually. The citations are to unasserted ***related*** patents (such as the '529, '326, and '639 patents) and applications (the '984 application, from which the '073 patent descends), and the application that eventually issued as the '024 patent. *Id.* But "[m]ere knowledge of a 'patent family' or the plaintiff's 'patent portfolio' is not enough" to support willful infringement. *Sonos, Inc. v. Google LLC*, C 21-07559-WHA, -- F.Supp.3d --, 2022 WL 799367, at *2 (N.D. Cal. Mar. 16, 2022).[11] Nor is knowledge of the application that issued as one of the Asserted Patents. *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a *patent*, the patent must exist and one must have knowledge of it.") (emphasis in original); *see also Kaufman v. Microsoft Corp.*, 2020 WL 364136, at *4 (S.D.N.Y. Jan. 22, 2020) (granting summary judgment of no willfulness because knowledge based on communications between Microsoft and the Patent Office citing the application that issued as the asserted patent was "insufficient as a matter of law"); *Radware, Ltd. v. F5 Networks, Inc.*, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016) (concluding that F5's citation to the published application of the asserted patent in its own patent applications was insufficient to support willfulness).

Moreover, there is no evidence establishing that Meta's in-house counsel knew



. *See* Ex. 20 (von Bargen 30(b)(6) Tr.) at 27:3-24 "), 47:20-48:5, 48:22-50:20, 52:2-17; Ex. 23 (Avery Tr.) at 23:9-27:25

[11] In fact, MasterObjects seemingly recognized in the co-pending Amazon case that its claims for willful infringement based solely on the citation to parent patents and applications to those patents were untenable, and MasterObjects dropped those claims. *See MasterObjects*, 2021 WL 4685306, at *2-3. MasterObjects subsequently dropped its infringement allegations of the '024 patent by Amazon altogether.

[REDACTED]), 28:1-6 ([REDACTED]), 32:6-33:10; *see also* Ex. 24 (King Tr.) at 63:6-9 ([REDACTED]). This makes sense—like many other large companies, Meta relies on its outside counsel to manage prosecution of its patent portfolio. *See, e.g.*, Ex. 20 (von Bargen 30(b)(6) Tr.) at 43:21-44:22, 49:16-20, 53:14-17; Ex. 25 (Tang 30(b)(6) Tr.) at 9:3-11, 15:4-9, 16:19-24, 26:16-21, 32:12-20; 46:8-47:3, 72:20-73:4, 106:3-107:20.

In sum, the record establishes that Meta did not have knowledge of the Asserted Patents prior to the Complaint. And because the Complaint cannot serve as notice, MasterObjects' entire claim for willful infringement—including for post-suit conduct—fails as a matter of law. *Sonos*, 2022 WL 799367, at *5 ("[T]his order joins those district courts that do not generally allow the complaint to serve as notice."); *see also, e.g.*, *Boston Sci. Corp. v. Nevro Corp.*, 560 F.Supp.3d 837 (D. Del. 2021) (granting summary judgment where knowledge was based on the filing of the complaint).

**B. MasterObjects Cannot Show that Meta Had Knowledge of Infringement and Specific Intent to Infringe**

Moreover, even if MasterObjects could show knowledge (and it cannot), mere knowledge of the Asserted Patents and the allegations of ongoing alleged infringement are insufficient for a finding of willfulness. Continuing to use the accused instrumentalities after learning of the Asserted Patents is insufficient evidence of willfulness. *Move, Inc. v. Real Estate Alliance Ltd.*, 221 F. Supp. 3d 1149, 1173 (C.D. Cal. 2016). And courts have repeatedly explained that continuing to make or offer an accused product after a lawsuit is filed is the kind "of 'garden-variety' patent case that *Halo* affirms is ill-suited for a finding of willfulness." *See, e.g.*, *M&C Innovations, LLC v. Igloo Prods. Corp.*, No. 4:17-CV-2372, 2018 WL 4620713 (S.D. Tex. July 31, 2018); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574 (D. Mass. 2018). Rather, MasterObjects must also establish that Meta "had a specific intent to infringe at the time of the challenged conduct." *BASF Plant*, 28 F.4th at 1275.

Notwithstanding the years' worth of discovery in this case, there is no evidence that Meta had the specific intent to infringe any of the Asserted Patents at any time. MasterObjects cannot show, as it must, that Meta has engaged in "misconduct beyond typical infringement." *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 110 (2016). Nor could it because Meta does not infringe, and MasterObjects' patents are invalid. *See, e.g., supra* Sections 0, V, V; Opp. to Mot. for Sanctions (Dkt. 173) at Section II.C. (discussing why Typeahead does not meet the "cache" limitation).

For these reasons, summary judgment of no willful infringement is warranted.

## VIII. CONCLUSION

For the foregoing reasons, Meta respectfully requests that the Court grant Meta's Motion for Summary Judgment.

***

Dated: August 26, 2022

Respectfully submitted,

*/s/ Jeffrey G. Homrig*
Douglas E. Lumish (SBN 183863)
Jeffrey G. Homrig (SBN 215890)
Clara Wang (SBN 321496)
LATHAM & WATKINS, LLP
140 Scott Drive
Menlo Park, CA 94025
Tel: (650) 328-4600
doug.lumish@lw.com
jeff.homrig@lw.com
clara.wang@lw.com

Joseph H. Lee (SBN 248046)
LATHAM & WATKINS LLP
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626-1925
Tel: (714) 540-1235
joseph.lee@lw.com

Gabriel Bell (*pro hac vice*)
Rachel Weiner Cohen (*pro hac vice*)
Tiffany C. Weston (*pro hac vice*)
LATHAM & WATKINS, LLP
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
gabriel.bell@lw.com
rachel.cohen@lw.com
tiffany.weston@lw.com

Paul Weinand (*pro hac vice*)
LATHAM & WATKINS LLP
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-6000
paul.weinand@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*