1   LATHAM & WATKINS LLP
    Douglas E. Lumish (SBN 183863)
2   Jeffrey G. Homrig (SBN 215890)
    Clara Wang (SBN 321496)
3   140 Scott Drive
    Menlo Park, CA 94025
4   (650) 463-2600
    doug.lumish@lw.com
5   jeff.homrig@lw.com
    clara.wang@lw.com
6
    Joseph H. Lee (SBN 248046)
7   650 Town Center Drive, Suite 2000
    Costa Mesa, CA 94025
8   (714) 540-1235
    joseph.lee@lw.com
9
    Gabriel K. Bell (*pro hac vice*)
10  Rachel Weiner Cohen (*pro hac vice*)
    Tiffany C. Weston (*pro hac vice*)
11  555 Eleventh Street, NW, Suite 1000
    Washington, DC 20004
12  (202) 637-2200
    rachel.cohen@lw.com
13  tiffany.weston@lw.com
14  Paul Weinand (*pro hac vice*)
    200 Clarendon Street
15  Boston, MA 02116
    (617) 880-4580
16  paul.weinand@lw.com
17  *Attorneys for Defendant Meta Platforms, Inc.*

18              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
19                  **SAN FRANCISCO DIVISION**
20

| | |
|---|---|
| 21   MASTEROBJECTS, INC., | Case No. 3:21-cv-05428-WHA (DMR) |
| 22              Plaintiff, | |
| 23        v. | **DEFENDANT META PLATFORMS'** |
|                | **REPLY IN SUPPORT OF ITS MOTION** |
|     METAPLATFORMS, INC., | **FOR SUMMARY JUDGMENT** |
| 24   | |
|                | Hearing Date:  October 13, 2022 |
| 25              Defendant. | Time:  8:00 AM |
|                | Judge:  Hon. William Alsup |
| 26   | Courtroom:  12, 19th Floor |
| 27 | |
| 28 | |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

                                    META'S REPLY ISO
                        MOTION FOR SUMMARY JUDGMENT
                        CASE NO. 3:21-cv-05428-WHA (DMR)

1

## **TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ...................................................................................................... 1

4   II.     MASTEROBJECTS' CLAIMS ARE INELIGIBLE UNDER § 101 .............................. 1

5           A.      The Asserted Claims Are Directed To The Abstract Idea of
                    Providing Real-time Results To A User As The User Enters Text...................... 2
6
7                   1.      MasterObjects Improperly Limits The Abstract Idea
                            Category................................................................................................ 2

8                   2.      MasterObjects' Features Provide No Technological
                            Improvement......................................................................................... 3
9
                    3.      MasterObjects' Cases Are Inapposite .................................................... 5
10
            B.      MasterObjects Identifies Nothing Inventive .................................................... 6
11
    III.    NON-INFRINGEMENT............................................................................................. 6
12
            A.      Meta Does Not Infringe the Asynchronous Limitations................................... 6
13
14                  1.      The Construction of "Asynchronous" is Clear And
                            Requires The Server To Be Free To "Push" Data Without
                            Waiting for the Client ........................................................................... 7
15
                    2.      MasterObjects' "Session" Argument Should Be Rejected ...................... 8
16
            B.      Meta Does Not Infringe the Query Message Limitations ................................... 9
17
    IV.     THERE IS NO EVIDENCE THAT ANY INFRINGEMENT WAS
18          WILLFUL ............................................................................................................... 12

19          A.      Meta Lacked The Requisite Knowledge and Intent to Infringe......................... 12

20          B.      There Is No Evidence Meta Intended to Infringe After the
                    Complaint Was Filed ...................................................................................... 14
21
    V.      IF MASTEROBJECTS' EXPERT, JOHN PECK, IS EXCLUDED,
22          SUMMARY JUDGMENT SHOULD FOLLOW .......................................................... 15

23   VI.    CONCLUSION ......................................................................................................... 15

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

i

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:21-cv-05428-WHA (DMR)

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Aftechmobile Inc. v. Salesforce.com, Inc.*,

5

    853 F. App'x 669 (Fed. Cir. 2021) ................................................................. 3

6

*Alice Corp. v. CLS Bank Int'l*,

    573 U.S. 208 (2014) ....................................................................................... 1

7

*Berkheimer v. HP Inc.*,

8

    881 F.3d 1360 (Fed. Cir. 2018) ..................................................................... 6

9

*Bot M8 LLC v. Sony Corp. of Am.*,

    4 F.4th 1342 (Fed. Cir. 2021) ................................................................... 2, 6

10

11

*British Telecomms. PLC v. IAC/InterActiveCorp*,

    813 F. App'x 584 (Fed. Cir. 2020) ............................................................... 1

12

*BSG Tech LLC v. BuySeasons, Inc.*,

13

    899 F.3d 1281 (Fed. Cir. 2018)............................................................. 4, 5, 6

14

*CareDx, Inc. v. Natera, Inc.*,

    40 F.4th 1371 (Fed. Cir. 2022) ..................................................................... 6

15

16

*Centricut, LLC v. Esab Grp., Inc.*,

    390 F.3d 1361 (Fed. Cir. 2004)................................................................... 15

17

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,

18

    935 F.3d 1341 (Fed. Cir. 2019) ..................................................................... 6

19

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,

    880 F.3d 1356 (Fed. Cir. 2018)..................................................................... 5

20

*FairWarning IP, LLC v. Iatric Sys., Inc.*,

21

    839 F.3d 1089 (Fed. Cir. 2016)..................................................................... 6

22

*In re Papst Licensing Digit. Camera Pat. Litig.*,

23

    778 F.3d 1255 (Fed. Cir. 2015) ................................................................... 10

24

*Intellectual Ventures I LLC v. Symantec Corp.*,

    234 F. Supp. 3d 601 (D. Del. 2017),

25

    *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018)................................................... 13

26

*Intellectual Ventures I LLC v. Symantec Corp.*,

27

    838 F.3d 1307 (Fed. Cir. 2016)............................................................ 2, 4, 5

28

*IPXL Holdings, L.L.C. v. Amazon.com*,

    430 F.3d 1377 (Fed. Cir. 2005)................................................................... 15

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

*Life Tech. Corp. v. Biosearch Techs., Inc.,*
No. C 12-00852 WHA, 2012 WL 1534891 (N.D. Cal. May 1, 2012)..................................10

*MasterObjects Inc. v. Amazon.com, Inc.,*
No. 3:20-cv-08103-WHA, Dkt. 415 (N.D. Cal. Sept. 15, 2022) ..........................................15

*MasterObjects, Inc. v. Amazon.com, Inc.,*
No. C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021) ...................................13

*MasterObjects, Inc. v. Google, Inc.,*
No. 4:11-cv-01054, 2013 WL 2319087 (N.D. Cal. May 28, 2013),
*aff'd,* 582 F. App'x 893 (Fed. Cir. 2014)...........................................................................12

*Nestle USA, Inc. v. Steuben Foods, Inc.,*
884 F.3d 1350 (Fed. Cir. 2018)...........................................................................................12

*Ohio Willow Wood Co. v. Alps S. LLC,*
735 F.3d 1333 (Fed Cir. 2013)............................................................................................12

*Radware, Ltd. v. F5 Networks, Inc.,*
No. 5:13-cv-02024-RMW, 2016 WL 4427490 (N.D. Cal. Aug. 22, 2016)........................14

*RecogniCorp, LLC v. Nintendo Co.,*
855 F.3d 1322 (Fed. Cir. 2017)..............................................................................................3

*Regents of Univ. of Minn. V. AGA Med. Corp.,*
717 F.3d 929 (Fed. Cir. 2013).............................................................................................11

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC,*
30 F.4th 1109 (Fed. Cir. 2022) ...........................................................................................13

*Simio, LLC v. FlexSim Software Prods., Inc.,*
983 F.3d 1353 (Fed. Cir. 2020).....................................................................................2, 4, 6

*SimpleAir, Inc. v. Google LLC,*
884 F.3d 1160 (Fed. Cir. 2018)...........................................................................................12

*Sonos, Inc. v. Google LLC,*
No. C 21-07559-WHA, 2022 U.S.P.Q. 2d 254,
2022 WL 799367 (N.D. Cal. Mar. 16, 2022).....................................................................15

*St. Clair Intell. Prop. Consultants, Inc. v. Canon Inc.,*
412 F. App'x 270 (Fed. Cir. 2011) ......................................................................................11

*Suprema, Inc. v. Int'l Trade Com'n,*
626 F. App'x 273 (Fed. Cir. 2015) ......................................................................................13

*Trustees of Bos. Univ. v. Everlight Elecs. Co.,*
896 F.3d 1357 (Fed. Cir. 2018).............................................................................................8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1

2

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020).........................................................................................5

3

*Universal Secure Registry LLC v. Apple Inc.*,
   10 F.4th 1342 (Fed. Cir. 2021) .......................................................................................5

4

5

*Wis. Alumni Research Found. v. Apple Inc.*,
   905 F.3d 1341 (Fed. Cir. 2018).......................................................................................11

6

7

*Yu v. Apple Inc.*,
   1 F.4th 1040 (Fed. Cir. 2021) .........................................................................................6

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

# I.     INTRODUCTION

Meta's motion explains why MasterObjects' claims in this case are too weak to proceed to trial.  The patents are directed to an abstract idea and claim unpatentable subject matter under section 101.  The undisputed facts establish critical differences between the asserted claims and the accused Typeahead feature, including as to the "asynchronous" and "query message" limitations.  There is no legitimate evidence of willfulness.  And if the Court precludes MasterObjects' experts from testifying—whether because they set forth theories that MasterObjects failed to disclose during discovery, because they fail to meet the notice and reliability standards for expert testimony, or both—MasterObjects cannot prove its claims.  MasterObjects does not contest the latter motion for summary judgment.  And, as to the others, its scattershot arguments and colorful rhetoric do not conceal the absence of evidence supporting its claims.  MasterObjects' opposition merely serves to confirm that there is no genuine dispute of material fact precluding summary judgment.

# II.     MASTEROBJECTS' CLAIMS ARE INELIGIBLE UNDER § 101

MasterObjects' asserted claims are ineligible under § 101 because they focus on an abstract idea (providing real-time results to a user as the user types) and merely implement that concept with conventional computer components (such as a server) without improving the computer technology itself.  *See* Dkt. 208-3 ("Mot.") 2-15; *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217-27 (2014).  MasterObjects' opposition does not change that conclusion.  *See* Dkt. 233-4 ("Opp.") 12-22.

At both steps of the *Alice* analysis, MasterObjects argues that its claims are eligible based on three features: asynchronous communication, a usability test, and a server cache.  But those do not make the claims non-abstract (at step one) or add anything inventive (at step two).  The first two are part of the abstract idea itself and the third is a conventional computer component performing conventional functions (storing data for easy retrieval), as discussed below.  Beyond that, MasterObjects does not otherwise distinguish among its claims, thereby conceding that there are no other meaningful differences for § 101 purposes.  *See British Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587-88 (Fed. Cir. 2020) (patentee "forfeited its ability to argue that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:21-cv-05428-WHA (DMR)

other claims are separately patent eligible" by "not present[ing] any 'meaningful argument for the[ir] distinctive significance'"). And MasterObjects does not, and cannot, explain why there is any material factual dispute precluding summary judgment (there is not). Therefore, all of MasterObjects' asserted claims are ineligible as a matter of law.[1]

### A. The Asserted Claims Are Directed To The Abstract Idea of Providing Real-time Results To A User As The User Enters Text

At *Alice* step one, MasterObjects admits that providing real-time results (such as predictive searching or auto-completion) as a user types is an abstract idea that has been "widely" performed by computers "for years." '024 patent, 6:40-67; *see* Mot. 7-8; Opp. 18 (agreeing that "predictive searching in the abstract is abstract" and "auto-completion itself was known"). Yet MasterObjects contends its claims are not directed to that abstract idea for three reasons. All fail.

### 1. MasterObjects Improperly Limits The Abstract Idea Category

MasterObjects argues that its claims are not abstract because they do not "merely digitize an old economy model." Opp. 13. That argument fails: "the category of abstract ideas is ***not limited to economic or commercial practices*** or methods of organizing human activity." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) ("*Symantec*").[2]

The abstract idea category includes, for example: (i) longstanding computer activities, *see, e.g.*, *Simio, LLC v. FlexSim Software Products, Inc.*, 983 F.3d 1353, 1360 (Fed. Cir. 2020) ("using graphical processes to simplify simulation building" is abstract as it was an "already-widespread" computer practice); *Symantec*, 838 F.3d at 1319 (virus screening was abstract as it "was a long prevalent practice in the field of computers"); (ii) activities that humans can perform, putting aside generic computer steps, *see, e.g.*, *Symantec*, 838 F.3d at 1318 (email system was abstract as it was akin to mailroom); and (iii) generalized computer steps lacking a particular technological advance or implementation details, *see, e.g.*, *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017) ("generalized steps to be performed on a computer using conventional computer activity are

---

[1] MasterObjects' procedural complaint about the timing of this § 101 motion—"Why now?" (Opp. 1)—is puzzling. Eligibility is routinely resolved as a matter of law on summary judgment—i.e., "after discovery" (*id.*)—and now is this Court's appointed time to address summary judgment. *See, e.g.*, *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1351 (Fed. Cir. 2021) (affirming this Court's summary judgment of ineligibility).

[2] All emphases added unless otherwise noted.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

2

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1  abstract"); *Aftechmobile Inc. v. Salesforce.com, Inc.*, 853 F. App'x 669, 669 (Fed. Cir. 2021) ("rec-

2  itation of desired functions without corresponding recitations on how to achieve or implement

3  [them is] abstract").  As Meta explained, MasterObjects' asserted claims fall into each of those

4  categories and are, therefore, abstract at step one for each of those separate reasons.  Mot. 7-10.

### 2.      MasterObjects' Features Provide No Technological Improvement

6          MasterObjects further argues that its claims provide "specific improvements to web search

7  technology."  Opp. 12; *see also* Opp. 13.  Every word of that is wrong.  The claims do not remotely

8  recite or require any "specific improvements to … technology."  To the contrary, the specification

9  admits that the claimed invention uses ***existing*** technology—"clients" and "servers" communi-

10  cating "asynchronously"—to provide results as the user types.  Mot. 3-4, 9-10.  The "invention

11  can be implemented on ***any*** client and server system … that support[s] asynchronous network

12  connections"; a "client" can be "***any*** process or mechanism that can send characters and receive

13  string lists"; and the "server" can be ***anything*** that "handles requests for information from clients."

14  '024 patent, 30:58-62, 11:57-12:1; *see* '073 patent, 38:53-55 (any "conventional general purpose

15  … computer").  And the claims require only the most basic, generic computer functions for re-

16  trieving and providing data.  Mot. 9-10.  Nor is the claimed invention limited to the "web" or any

17  particular network—let alone any specific improvements thereto.  *See* '024 patent, 29:48-49 (pur-

18  ported invention "is *not* limited to the web").  The claims also do not require or improve on any

19  specific "search" results—they broadly encompass retrieving *any* content from "any string-based

20  content source."  *Id.* at 6:20-22; *see also id.* at 15:26-27; *id.* at cl. 6; '073 patent, cl. 1.

21          MasterObjects singles out three (and only three) claimed features—asynchronous commu-

22  nication, a usability test, and a server cache.  Opp. 13-16.  None makes the claims eligible.

### a.      "Asynchronous Communication" Is Part Of The Abstract Idea

24          According to MasterObjects, "Meta's abstract[ idea] … ignores asynchronous communi-

25  cation."  Opp. 18.  That is false.  Meta expressly explained that leveraging "asynchronous com-

26  munication—i.e., not having to wait to for the other side before communicating —and leveraging

27  that approach to provide results to the client while the user is still typing (or in real time) ***is the***

28  ***abstract idea***."  Mot. 14; *see also* Mot. 3-4 & n.2, 8.  As Meta discussed (Mot. 7-8), communicating

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    without waiting for the other side is something computers have long done (e.g., in "auto-complete

2    functions," '024 patent, 6:31-37) or that humans readily do (e.g., in everyday conversation).[3]

3          MasterObjects further argues that the claims' use of "asynchronous communication" (to

4    provide real-time results) improves on systems that provided results only when, for example, the

5    user hits enter. *See* Opp. 11-12.  But, again, this is merely the abstract idea itself as shown by the

6    specification which refers to the provision of "intelligent suggestions" that "change dynamically

7    as the user types" as "widely used throughout the computing world for many years."  '024 patent,

8    6:31-37.  Where, as here, the purported improvement to computer systems stems from an abstract

9    idea, that cannot make the claims non-abstract.  For example, in *Symantec*, the Federal Circuit held

10   ineligible claims that purportedly improved on prior computer systems because they merely im-

11   plemented an abstract idea (computer virus protection) in another environment (in a network in-

12   stead of on a client device).  838 F.3d at 1319-21.  Similarly, in *Simio*, the Federal Circuit held

13   ineligible claims that purportedly improved on prior computer systems because they merely im-

14   plemented an abstract idea ("the already-widespread practice of using graphics instead of program-

15   ming") in another context ("object-oriented simulations").  983 F.3d at 1360.  So too here.

16         MasterObjects insists that the claims "did not simply move" as-you-type auto-complete or

17   predictive searching "to the server."  Opp. 19.  But the specification says otherwise: the purported

18   improvement is having the "widely used" search suggestion functionality "reside on the server,

19   thus taking advantage of server-side power."  '024 patent, 6:30-36, 6:44-45.  Such purported im-

20   provements "'inherent with applying the abstract idea'" in a computer environment are "'insuffi-

21   cient to render the claims patent eligible.'"  *Simio*, 983 F.3d at 1361; *see also BSG Tech LLC v.*

22   *BuySeasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018).  Therefore, the claims' recitation of asyn-

23   chronous client-server communication does not make the claims non-abstract.

24              **b.    The "Client-Side Usability Test" And "Server-Side Cache" Do
                        Not Make The Claims Non-Abstract**

25         Likewise, MasterObjects' other two features—a "client-side usability test" and a "server-

26   side cache" (Opp. 16)—do not save its claims.  *See* Mot. 11.

---

[3] MasterObjects concedes this point when it highlighted examples of humans talking over each other.  *See* Opp. 19.  That doing so may not always be helpful does not mean it is not abstract.

1    A usability test goes hand-in-hand with using asynchronous communications to provide

2    real-time results, as MasterObjects implicitly acknowledges.  Opp. 16; Mot. 11.  Providing results

3    from the server asynchronously means that the results can be outdated by the time they are re-

4    ceived.  *See* Opp. 16.  It follows that the client should test whether results are "usabl[e]," which

5    can be as simple as matching against the current query.  Mot. 11.  Therefore, a "usability test" is

6    part of the abstract idea and requires only basic computer processing, not a technological advance.

7    A "server-side cache" is just a cache located on the server instead of on the client.  *See*

8    Opp. 16.  It performs its conventional function with expected results—i.e., temporarily storing

9    results for easier retrieval—just in a different location.  This is not a technological advance.  *See*

10   *BSG*, 899 F.3d at 1288 ("benefits that flow from performing an abstract idea in conjunction with

11   a well-known database structure" not a technological advance); *Universal Secure Registry LLC v.*

12   *Apple Inc.*, 10 F.4th 1342, 1353 (Fed. Cir. 2021) (using "long-standing conventional" technology

13   for its "expected" benefits not a technological advance); *Symantec*, 838 F.3d at 1319-21; Mot. 11.

### 3.    MasterObjects' Cases Are Inapposite

15   MasterObjects relies on inapposite decisions: *Core Wireless Licensing S.A.R.L. v. LG Elec-*

16   *tronics, Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), and *Uniloc USA, Inc. v. LG Electronics USA, Inc.*,

17   957 F.3d 1303 (Fed. Cir. 2020).  Opp. 17.  In *Core Wireless*, the claims were eligible because they

18   recited a specific improvement—"an improved user interface for electronic devices, particularly

19   those with small screens" and "restrain[ed] the type of data that can be displayed."  880 F.3d at

20   1363.  Here, the claims do not require a user interface *at all*, let alone an improved one, '024 patent,

21   11:65-66, and, as discussed, results can be *anything* from *any* source displayed in *any* way—the

22   opposite of *Core Wireless*.  In *Uniloc*, the claims specifically improved "the communication sys-

23   tem itself," "allowing primary stations to send inquiry messages and conduct polling simultane-

24   ously" and thereby reduced "latency."  957 F.3d at 1305, 1307-08.  In contrast, here, the specifi-

25   cation does not provide any improvement in asynchronous communication—the claims merely

26   use *existing* computer technology to retrieve results in real time.  *Supra* at 3.

27   MasterObjects' claims are just as abstract as the purportedly improved computer claims in

28   the cases Meta discussed (Mot. 8-10 & n.5), nearly all of which MasterObjects ignores.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

**B.    MasterObjects Identifies Nothing Inventive**

At step two, the Court must determine whether the claims add something inventive "apart from" the abstract idea. *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348-49 (Fed. Cir. 2019). MasterObjects does not meaningfully undertake this inquiry and identifies nothing inventive apart from the abstract idea itself and other conventional functionality.

In particular, MasterObjects rehashes the same three features from step one, arguing that "asynchronously, usability test, and server-side cache limitations provide inventive concepts." Opp. 20. Just as those added nothing non-abstract, they also add nothing inventive. *Supra* at 3-4; *Chamberlain*, 935 F.3d at 1349 ("Wireless communication cannot be an inventive concept here, because it is the abstract idea that the claims are directed to."); *BSG*, 899 F.3d at 1291 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."). Nor does using a cache—a thoroughly conventional feature for storing data—on the server instead of the client add something significant to the abstract idea. *See supra* at 3.

Finally, as a last-ditch effort to stave off ineligibility, MasterObjects argues, without explanation, that there is "[a]t the least" a fact issue. Opp. 22.[4] But , where, as here, the specifications and claim language show the claims lack eligibility, the Federal Circuit holds claims ineligible as a matter of law despite patentees' conclusory assertions of fact issues. *See, e.g.*, *Simio*, 983 F.3d at 1365; *Yu v. Apple Inc.*, 1 F.4th 1040, 1046 (Fed. Cir. 2021); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016).[5] Summary judgment of ineligibility is warranted.

## III.    NON-INFRINGEMENT

### A.    Meta Does Not Infringe the Asynchronous Limitations

As shown in Meta's opening brief, under the Court's construction of "asynchronous," Meta does not infringe as a matter of law. In opposition, MasterObjects takes a shotgun approach and

---

[4] At most, MasterObjects suggests that there is a factual dispute over whether "'a claim element'" is "'conventional.'" Opp. 22. But MasterObjects never says which "element" or why. To the extent MasterObjects is referring to the asynchronous communication, usability tests, and a server cache, those add nothing inventive as a matter of law, as discussed.

[5] *See also Bot M8*, 4 F.4th at 1351 (expert testimony "insufficient 'to forestall summary judgment'"); *CareDx, Inc. v. Natera, Inc.*, 40 F.4th 1371, 1377 (Fed. Cir. 2022) ("expert testimony and other extrinsic evidence was contrary to, and therefore could not overcome, the admissions in the specification"); *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018) ("eligibility has in many cases been resolved on … summary judgment").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    raises a host of arguments in the hopes of creating the impression of a question of fact.  But, in

2    doing so, MasterObjects ignores the key issue: the Court's construction is clear and requires that

3    "each side of the communication is free to communicate without waiting for the other side."  Dkt.

4    206-3.  MasterObjects does not (and cannot accurately) deny that Meta's accused servers are never

5    "free to communicate" with a client without first waiting for the client to send a request; rather the

6    servers always "wait for the other side" in contravention to the construction.  *See* Mot. at 15-16.

7    Indeed, MasterObjects cannot accurately deny that the server can only respond to a query from the

8    client, and it can only send one response to that query.  *See* Dkt. 229-1 (Peck Rpt.) ¶¶ 63-65; Dkt.

9    229-2 (Black Rpt.) ¶¶ 50, 58-59; Dkt. 229-3 (Smedley Tr.) at 156:20-157:4.  Given this undisputed

10   record, summary judgment of non-infringement should be entered.

11       Throughout its opposition, MasterObjects attempts to "construe the construction" of "asyn-

12   chronous" to reshape it into a new term MasterObjects hopes will better support its infringement

13   positions.  These new twists on the construction should be soundly rejected.

14            **1.    The Construction of "Asynchronous" is Clear And Requires The
                      Server To Be Free To "Push" Data Without Waiting for the Client**

15       MasterObjects' primary argument for reconstruing "asynchronous" is that the server some-

16   how need not be able to communicate without waiting for a client request.  This is foreclosed by

17   the plain language of the construction itself: "***each side*** of the communication is free to communi-

18   cate without waiting for the ***other side***."  Dkt. 206-3.  MasterObjects' expert, Mr. Peck, conceded

19   that the "sides" of the communication are the client and server, Dkt. 228-9 (Peck Tr.) at 162:21-

20   163:5, and so the construction expressly requires that the server, too, is free to communicate with

21   the client without waiting for the client first.  And the specification highlights the server's ability

22   to "automatically push[] to the client" as a benefit of the claimed invention.  *See* '024 Patent, 6:15-

23   16 ("data are automatically pushed to the client"); *id.* at 12:32-34.

24       MasterObjects argues that the adopted construction was "briefed by both sides as not re-

25   quiring a 'server push' limitation."  Opp. 10.  This is false.  Meta explicitly argued otherwise: that

26   under the adopted construction "***either side is free*** to communicate without waiting for the other"

27   and that this "is a natural characteristic of a system in which both the client and ***server can initiate***

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1   *communications* at any point in time." Dkt. 57 (Meta CC Resp. Br.) at 22.  And, while it reverses

2   field now, MasterObjects itself acknowledged in its claim construction brief that "[t]hese claims

3   do not require the client or *server system* to wait its turn; each is free to send messages on its own

4   timetable. The claims also do not require the messages to be sent or received in any particular

5   order." Dkt. 55 (MasterObjects CC Br.) at 24.

6        MasterObjects also argues that "[t]he claims themselves **require** that the client initiate the

7   conversation."  Opp. 11 (emphasis in original).  Here again, MasterObjects' argument cannot be

8   squared with what it said during claim construction: "The claims also *do not require the messages*

9   *to be sent or received in any particular order*."  Dkt. 55 at 24.  And MasterObjects' new construc-

10  tion is also inconsistent with the plain language of at least one claim that expressly requires the

11  server to send updated information without waiting for another request from the client.  *See, e.g.,*

12  '024 Patent, cl. 30 ("the server system automatically sends messages containing new[6] results to

13  the client object as updated data in response to a previous query becomes available").

14       MasterObjects also errs in leaning on the fact that it proposed the construction adopted by

15  the Court.  *See, e.g.*, Opp. at 10 ("as proposed by MasterObjects"), 26-27 ("MasterObjects' con-

16  struction").  That MasterObjects proposed the construction does not change its meaning, or add or

17  remove words from it.  Nor does it mean that MasterObjects' reinterpretation must be correct.  On

18  the contrary, Courts often adopt constructions that are detrimental to the party that proposed them

19  and, like here, parties often propose constructions without appreciating that those constructions

20  will ultimately cause them problems.  *See generally Trustees of Bos. Univ. v. Everlight Elecs. Co.,*

21  896 F.3d 1357, 1365 (Fed. Cir. 2018) ("Having obtained a claim construction that included a

22  purely amorphous layer within the scope of the claim, BU then needed to successfully defend

23  against an enablement challenge as to the claim's full scope.")

24               **2.      MasterObjects' "Session" Argument Should Be Rejected**

25       MasterObjects' second main attack is to read into the claims a requirement that confines

26  "asynchronous" to apply only during what MasterObjects calls a "search session."  Opp. 11.  This

27  argument too should fail.

28

---

[6] Corrected from "Previously Presented." '024 Patent, Certificate of Correction.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    The terms "session" or "search session" are never used in the asserted claims, and are im-

2    ported by MasterObjects whole cloth.  *See*, *e.g.*, '024 Patent, cl. 1.  The lack of reference to a

3    session in the claims was neither a mistake nor a function of vague claim drafting; it was a delib-

4    erate choice.  This is evident because when MasterObjects intended to limit to a session the claims

5    in ***other*** patents not asserted in the case, it did so explicitly.  For example MasterObjects' unas-

6    serted '529 patent expressly includes a limitation which "allows the client system to send via the

7    network, and ***within a session*** between the client system and the server system, a lengthening

8    string."  Dkt. 206-13 ('529 Patent), cl. 1.  It also recites that the server returns results "while the

9    additional characters are being input and the corresponding consecutive queries are being trans-

10   mitted and the lengthening string is being modified ***during the session***."  *Id.*[7]

11   Even improperly reading MasterObjects' new "session" requirement into the claims does

12   not stave off summary judgment.  MasterObjects proffers no evidence that, even in a "session,"

13   the accused Typeahead server ever communicates with the client first without waiting for a request

14   from the client.  And no such evidence exists: Meta's Typeahead servers are solely configured to

15   respond to requests from clients and never initiate communications without "waiting for" the client

16   first.  *See* Dkt. 229-1 (Peck Rpt.) ¶¶ 63-65; Dkt. 229-2 (Black Rpt.) ¶¶ 50, 58-59; Dkt. 229-3

17   (Smedley Tr.) 156:20-157:4.

18   In sum, the record is clear: the claims as construed under MasterObjects' proposed con-

19   struction require the accused servers to be free to communicate with clients without waiting for

20   those clients to initiate the communication first.  This never happens in the accused system, so

21   summary judgment of non-infringement should be entered.

22   **B.    Meta Does Not Infringe the Query Message Limitations**

23   MasterObjects does not dispute that Typeahead cannot infringe the asserted claims if the

24   Court adopts the *Google* construction of the Query Messages terms.  There is no dispute that

25   Typeahead re-sends the entire input string in each query message as opposed to sending only the

26   new or changed characters to be appended to a string of prior transmitted characters collected at

27

28   _____

[7] Given this express claim language, it should come as no surprise that the constructions in prior
cases that included the '529 patent referenced a session.  *See* Dkt. 55 at 13-16.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    the server.  If the Court finds, as Judge Hamilton did in the *Google* case, that the specification

2    limits the claims to sending only the differences in the input string, summary judgment of non-

3    infringement inexorably follows.

4         MasterObjects' primary response in opposition is that the Court should not revisit the con-

5    struction entered before the case was transferred.  But it has no answer for the fact that, although

6    Judge Albright stated he was entering MasterObjects' proposed construction, he never issued an

7    order that explained his reasoning or formally entered the construction.  Thus, while MasterObjects

8    seeks to apply the reconsideration standard, Opp. 3, the lack of a written order setting forth Judge

9    Albright's rationale prevents the relevant analysis.  And, in all events, the Court is free to revisit

10   any claim construction before it renders judgment or submits the case to the jury, and, given the

11   parties' disputes, should do so here.  *In re Papst Licensing Digit. Camera Pat. Litig.*, 778 F.3d

12   1255, 1261 (Fed. Cir. 2015) ("a district court may (and sometimes must) revisit, alter, or supple-

13   ment its claim constructions"); *c.f.*, *Life Tech. Corp. v. Biosearch Techs., Inc.,* No. C 12-00852

14   WHA, 2012 WL 1534891 (N.D. Cal. May 1, 2012) (applying reconsideration standard where the

15   court issued a written claim construction order explaining its rationale).[8]

16        As to the merits of the construction, MasterObjects recycles its oft-repeated argument that

17   Meta is reading a mere example from the specification into the claims.  Opp. 3.  Not so.  As set

18   forth in Meta's opening brief, the consistent usage and singular description in the common speci-

19   fication establishes that "the invention" itself—not the QuestObjects embodiment—requires that

20   the client send to the server only the changes input by the user since the last transmission.  Mot.

21   18-20.  The specification, for example, states that "***the protocol of the present invention*** provides

22   a number of messages that allow the Client Quester to send ***just the changes*** to the input buffer,

23   instead of sending the entire input buffer."  '024 Patent, 20:14-17; *see Regents of Univ. of Minn.*

24   *V. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013) ("features of the 'present invention' as a

25   whole, … limit[] the scope").  And the specification exclusively describes sending only the

26

27   ───────────────
     [8] MasterObjects' position here is also inconsistent with its efforts to rewrite Judge Albright's con-
     struction of "asynchronous" (which Meta does not challenge here).  It cannot be the case that it is
28   somehow proper for MasterObjects to seek a new or altered construction of one term, but yet
     improper for Meta to do the same for a second term.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

changes, not that it can be done either way. *See* Mot. 20; *see also St. Clair Intell. Prop. Consult-*
*ants, Inc. v. Canon Inc*., 412 F. App'x 270, 273 (Fed. Cir. 2011) (limiting scope of claim term
where "the specification uniformly describes" one solution); *Wis. Alumni Research Found. v. Ap-*
*ple Inc.,* 905 F.3d 1341, 1351 (Fed. Cir. 2018) ("Where, as here, a patent repeatedly and consist-
ently characterizes a claim term in a particular way, it is proper to construe the claim term in
accordance with that characterization.") (citations and quotations omitted).

Turning to collateral estoppel, MasterObjects contends it does not apply because the lan-
guage of the asserted claims has changed since Judge Hamilton's and the Federal Circuit's deci-
sions in the *Google* case. Opp. 5-9. But this is wrong on the facts and the law.

Though amended, the claims of the asserted patents still reflect the clear teaching of the
specification requiring that only the changes are sent to the server. The '024 patent, claim 1, for
example, recites the same concept from the '529 patent of a "lengthening string" that is formed by
"additional characters." Dkt. 206-5 ('024 Patent), cl. 1; *see also id.* at 8:33-36 ("sending a char-
acter-by-character string of data to an intelligent server that can be configured to immediately
analyze the lengthening string character-by-character"). Likewise, the '628 patent requires a
"lengthening string of characters" formed by user input, and for the client to send "multiple query
messages corresponding to multiple versions of said input." Dkt. 206-6 ('628 Patent), cl. 1. The
'866 and '073 patents require "modification by a user of a search query" or "entry of a content
search query" leading to transmission of "an incomplete version of the search query" or "an in-
complete search query." Dkt. 206-7 ('866 Patent), cl. 1; Dkt. 206-8 ('073 Patent), cl. 1. Tellingly,
when confronted with the Patent Office's rejections for obviousness-type double patenting in light
of the '529 patent, MasterObjects did not ask then "what of the new claim language?" as it does
here. Opp. 5. Rather, it conceded the point and filed a terminal disclaimer rather than contest the
Patent Office's determination that the asserted claims cover at best an obvious variation of the
claims of the '529 patent. Dkt. 54-8 ('024 TD); *see also* Dkt. 54-9 ('628 TD); Dkt. 54-10 ('866
TD); Dkt. 54-11 ('073 TD); *SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1168 (Fed. Cir. 2018)
("a terminal disclaimer is a strong clue that a patent examiner and, by concession, the applicant,
thought the claims in the continuation lacked a patentable distinction over the parent").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    MasterObjects runs afoul of the law when it contends that the inquiry is whether "the claims

2    [are] 'materially indistinct' from the prior claims." Opp. 8 (citing no authority).  The law is clear

3    that "collateral estoppel is not limited to patent claims that are identical.  Rather, it is the identity

4    of the *issues* that were litigated that determines whether collateral estoppel should apply." *Nestle*

5    *USA, Inc. v. Steuben Foods, Inc*., 884 F.3d 1350, 1352 (Fed. Cir. 2018) (emphasis in original)

6    (citations omitted); *see also Ohio Willow Wood Co. v. Alps S. LLC*, 735 F.3d 1333, 1342 (Fed Cir.

7    2013).  MasterObjects does not dispute that the specification of the asserted patents is identical to

8    the specification addressed in *Google* in this District and the Federal Circuit. And the Court in

9    *Google* held that that specification limits the scope of the invention, and thus of the claims, which

10   is exactly what Meta contends in this action.  *See MasterObjects, Inc. v. Google, Inc.*, No. 4:11-

11   cv-01054, 2013 WL 2319087, at *12 (N.D. Cal. May 28, 2013), *aff'd*, 582 F. App'x 893 (Fed. Cir.

12   2014).  The issue is thus identical, and collateral estoppel applies.  *See, e.g.*, Dkts. 54, 57, 59.

13   **IV.    THERE IS NO EVIDENCE THAT ANY INFRINGEMENT WAS WILLFUL**

14   MasterObjects' opposition confirms that it cannot show that Meta had knowledge of the

15   Asserted Patents, knowledge of infringement, or intent to infringe before the filing of its Com-

16   plaint.  Nor can MasterObjects demonstrate a genuine question of material fact based on Meta's

17   post-suit conduct.  It does not point to any evidence upon which a reasonable jury could find Meta's

18   conduct willful, because there is none.  Instead, MasterObjects repeats its well-worn excuse that

19   Meta hid evidence.  But, here too, that allegation is false, as the record confirms.  In truth, there is

20   no evidence of willfulness because Meta was not willful.

21   **A.    Meta Lacked The Requisite Knowledge and Intent to Infringe**

22   As an initial matter, MasterObjects' opposition effectively abandons its pre-suit willfulness

23   allegations as to the '628, '866, and '073 patents.  MasterObjects points to no evidence that Meta

24   knew of the '628, '866, or '073 patents before it filed suit, much less that it had the specific intent

25   to infringe them, and does not even argue that these allegations should advance to trial.  Summary

26   judgment of no pre-suit willfulness should thus be entered for all three of those patents.

27   As to the '024 patent, MasterObjects argues that Meta learned of the '024 patent *applica-*

28   *tion* and *family* during prosecution of Meta's patents.  Opp. 22-23.  This concession alone is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1   enough to establish that summary judgment is appropriate: knowledge only of an application or

2   patent family is insufficient to establish willfulness as a matter of law.  Mot. 22-25.  MasterObjects

3   deposed Meta's in-house and outside prosecution counsel who testified consistently: there is no

4   evidence that Meta had any knowledge of the '024 patent (or any asserted patent) until MasterOb-

5   jects filed this lawsuit.  *See, e.g.*, Dkt. 229-4 (von Bargen  Tr.) 11:4-12:11; *see also* Ex. 28 (King

6   Tr.) 91:5-8; Ex. 29 (Avery Tr.) 36:10-18; Ex. 30 (Tang Tr.) 113:21-114:2.  The law is clear that

7   this "evidence alone is not sufficient to conclude [Meta] had knowledge of the patent for willful-

8   ness purposes" on summary judgment.  *Intellectual Ventures I LLC v. Symantec Corp.*, 234 F.

9   Supp. 3d 601, 611 (D. Del. 2017), *aff'd*, 725 F. App'x 976 (Fed. Cir. 2018) (collecting cases).[9]

10      Even if MasterObjects could show that Meta had knowledge of the '024 patent (it cannot),

11   there is no evidence that Meta had knowledge of infringement or intent to infringe before the filing

12   of the Complaint.  MasterObjects conflates knowledge of a patent with knowledge of its infringe-

13   ment.  But, as this Court has explained, mere knowledge of the asserted patents does not give rise

14   to knowledge of infringement.  *MasterObjects*, 2021 WL 4685306, at *4.

15      MasterObjects' fallback argument—that Meta put its head in the sand to avoid knowledge

16   of infringement—fares no better.  Willful blindness requires a showing that Meta subjectively

17   believed there was a high probability that the accused product infringed, and that Meta took delib-

18   erate actions to avoid learning of that infringement.  *Roche Diagnostics Corp. v. Meso Scale Di-*

19   *agnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022).  MasterObjects cannot show either.  First,

20   as discussed above, the uncontroverted evidence shows that Meta and its outside prosecution coun-

21   sel did not know about the asserted patents until the lawsuit was filed, and thus could not have

22   knowledge of any alleged infringement.  Second, MasterObjects' reliance on a rejection of a Meta

23   patent application based on a different MasterObjects' patent—the unasserted '529 patent—does

24

25   ───────────────────────
[9] The cases MasterObjects cites are inapposite.  In *MasterObjects, Inc. v. Amazon.com, Inc.*, No.
26   C 20-08103 WHA, 2021 WL 4685306 (N.D. Cal. Oct. 7, 2021), the Court was resolving a motion
     to dismiss, where the pleading standard is far lower.  In *Suprema*, the parties were competitors and
27   the defendant "engag[ed] in extensive market research," including "researching and identifying
     [competitor]'s patents."  *Suprema, Inc. v. Int'l Trade Com'n*, 626 F. App'x 273, 280-81 (Fed. Cir.
28   2015).  MasterObjects admits that the parties are not competitors and offers no rationale why Meta
     would have undertaken such efforts to learn about MasterObjects' patents (there is none).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    nothing to cure this fatal defect.[10]  Third, MasterObjects' attempt to create an inconsistency be-

2    tween in-house counsel and outside prosecution counsel is negated by the actual record.  Mr. Tang

3    did not testify that he "knew nothing of Meta's own patent prosecutions," as MasterObjects claims.

4    Rather, he testified that Meta relies on outside counsel for their expertise and is kept reasonably

5    informed of prosecutions.  Dkt. 229-7 (Tang Tr.) 15:4-20, 17:22-18:11.  This is entirely consistent

6    with prosecution counsel's testimony.  Ex. 29 (Avery Tr.) 19:20-20:6, 14:23-15:7; Ex. 28 (King

7    Tr.) 77:20-78:5.  Moreover, this entire argument is a red-herring—none of this testimony viewed

8    in the light most favorable to MasterObjects could show willful blindness as to the knowledge of

9    *infringement* of the Asserted Patents.

10        Finally, MasterObjects has admitted that it did not provide notice of the Asserted Patents

11   before filing suit.  *See* Dkt. 228-19; Dkt. 134 (stipulation).  MasterObjects' failure to provide notice

12   of infringement to Meta where Typeahead was available years before this lawsuit contradicts a

13   finding of willfulness.  *Radware, Ltd. v. F5 Networks, Inc.*, No. 5:13-cv-02024-RMW, 2016 WL

14   4427490, at *3 (N.D. Cal. Aug. 22, 2016).

15        In sum, there is no evidence—and MasterObjects identifies none—that Meta knowingly

16   infringed the asserted patents.  Summary judgment is proper.

17   **B.    There Is No Evidence Meta Intended to Infringe After the Complaint Was Filed**

18        Last, MasterObjects disregards this Court's recent precedent finding that the complaint

19   itself cannot serve as notice for purposes of willfulness.  *Sonos, Inc. v. Google LLC*, No. C 21-

20   07559-WHA, 2022 WL 799367, at *5 (N.D. Cal. Mar. 16, 2022).  Nevertheless, even if the Court

21   were to consider the merits of MasterObjects' post-suit argument, its claims likewise fail.  Specif-

22   ically, MasterObjects' complaint that Meta asked the Court to resolve a claim construction dispute

23

24

25   _____

26   [10] MasterObjects' suggestion that a reference to "typeahead" in *Meta*'s patent applications shows
     knowledge of infringement as to *MasterObjects'* patents is nonsensical.  The patents themselves
27   acknowledge that "typeahead" is a generic term for technology that predates MasterObjects' pa-
     tents, *see, e.g.,* '024 Patent, 3:44-47 (describing "current systems" as including "type-ahead") and
     there is no evidence that Meta's patent applications used the term to refer to MasterObjects' as-
28   serted patents or their claimed inventions.  *See also, e.g.,* Ex. 31, (van den Oord Tr.) 80:13-22
     (named inventor admitting website with auto complete "not necessarily" using claimed invention).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1    and its litigation-driven criticism of the strength of two of Meta's anticipation references,[11] does

2    not distinguish this from a typical infringement case.  Mot. 22-25.  And, notably, MasterObjects

3    does not challenge Meta's non-infringement defenses or numerous other invalidity defenses, in-

4    cluding obviousness, written description, and ineligible subject matter.

5            Viewing the evidence in the light most favorable to MasterObjects, no reasonable jury

6    could find for MasterObjects.  There is no evidence that Meta had the requisite knowledge and

7    intent to infringe, and so the Court should grant Meta's motion of no willful infringement.

8    **V.      IF MASTEROBJECTS' EXPERT, JOHN PECK, IS EXCLUDED, SUMMARY**
     **JUDGMENT SHOULD FOLLOW**
9

10           In its Motion, Meta requested summary judgment should the Court grant Meta's co-pend-

11   ing *Daubert* Motion and exclude MasterObjects' liability expert, John Peck, from testifying con-

12   cerning the many new and unsupported infringement theories added to his report but absent from

13   MasterObjects' infringement contentions and discovery responses.[12]  Mot. 21-22.  MasterObjects'

14   does not oppose this ground for summary judgment (or respond to it at all), and so, should Meta's

15   *Daubert* concerning Mr. Peck be granted, summary judgment of non-infringement should follow.

16   *See Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004); *MasterObjects Inc.*

17   *v. Amazon.com, Inc.*, No. 3:20-cv-08103-WHA (Dkt. 415) at 16 ("Consequently, with no relevant

18   expert testimony [that the accused "underlying data source" could "itself be queried"], the order

19   finds that MasterObjects cannot prove infringement.") (citing *Centricut*).

20   **VI.     CONCLUSION**

21           For the foregoing reasons, Meta respectfully requests that the Court grant Meta's Motion

22   for Summary Judgment.

23

24

---

25   [11] Prior art raised during Patent Office proceedings can and does invalidate patent claims.  *IPXL Holdings, L.L.C. v. Amazon.com*, 430 F.3d 1377, 1381 (Fed. Cir. 2005) ("a patent may be found
26   to be anticipated on the basis of a reference that had properly been before the patent examiner").

27   [12] Included among these are Mr. Peck's belated theories confusing the "cache" with the "content source" in many of the asserted claims in this action.  Dkt. 207.  Thus, MasterObjects errs in its
     contention that "Meta does not make a SJ non-infringement argument on caching. This is because
28   it infringes under the agreed constructions."  Opp. 2, n.1.  Meta does not practice the caching terms
     as construed.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA

1

Dated:  September 16, 2022                     Respectfully submitted,

2

3                                              /s/ Jeffrey G. Homrig
                                               Douglas E. Lumish (SBN 183863)
                                               Jeffrey G. Homrig (SBN 215890)
4                                              Clara Wang (SBN 321496)
                                               LATHAM & WATKINS, LLP
5                                              140 Scott Drive
                                               Menlo Park, CA 94025
6                                              Tel:  (650) 328-4600
                                               doug.lumish@lw.com
7                                              jeff.homrig@lw.com
                                               clara.wang@lw.com
8

9                                              Joseph H. Lee (SBN 248046)
                                               LATHAM & WATKINS LLP
                                               650 Town Center Drive, 20th Floor
10                                             Costa Mesa, CA 92626-1925
                                               Tel:  (714) 540-1235
11                                             joseph.lee@lw.com

12                                             Gabriel K. Bell (*pro hac vice*)
                                               Rachel Weiner Cohen (*pro hac vice*)
13                                             Tiffany C. Weston (*pro hac vice*)
                                               LATHAM & WATKINS, LLP
14                                             555 Eleventh Street, NW, Suite 1000
                                               Washington, D.C. 20004
15                                             Tel:  (202) 637-2200
                                               rachel.cohen@lw.com
16                                             tiffany.weston@lw.com

17                                             Paul Weinand (*pro hac vice*)
                                               LATHAM & WATKINS LLP
18                                             200 Clarendon Street
                                               Boston, MA 02116
19                                             Tel:  (617) 948-6000
                                               paul.weinand@lw.com
20

21                                             *Attorneys for Defendant Meta Platforms, Inc.*

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

META'S REPLY ISO
MOTION FOR SUMMARY JUDGMENT
3:21-cv-05428-WHA